1                    UNITED STATES DISTRICT COURT
                      DISTRICT OF NEW JERSEY
2

3    ----------------------------
     ASTRAZENECA AB, et al,       : Case No. CV-11-760 (JAP)
4                                 :
                     Plaintiffs,  :
5         vs.                     :
                                  : 402 East State Street
6    HANMI USA, et al,            : Trenton, New Jersey 08608
                                  :
7                    Defendants.  : November 28, 2012
                                  :
8    ----------------------------
     ASTRAZENECA AB, et al,       : Case No. CV-12-1378 (JAP)
9                                 :
                     Plaintiffs,  :
10        vs.                     :
                                  :
11   MYLAN LABORATORIES           :
     LIMITED, et al,              :
12                                :
                     Defendants.  :
13   ----------------------------

14                TRANSCRIPT OF DISCOVERY CONFERENCE
15             BEFORE HONORABLE TONIANNE BONGIOVANNI
                  UNITED STATES MAGISTRATE JUDGE
16

17

18

19
     Audio Operator:             Electronically Recorded
20                               by Court Personnel

21
                    AudioEdge Transcription, LLC
22             425 Eagle Rock Avenue - Suite 201
                   Roseland, New Jersey 07068
23                      (973) 618-2310
                  www.audioedgetranscription.com
24
     Proceedings recorded by electronic sound recording, transcript
25   produced by certified transcription service.

```
 1    APPEARANCES: (Via Telephone)

 2    For the Plaintiffs:          Henry J. Rank, Esq.
                                   FITZPATRICK, CELLA, HARPER
 3                                  & SCINTO

 4                                 Robin Patel, Esq.

 5                                 Bruce Bass, Esq.

 6                                 Pinar Stole, Esq.

 7                                 Ray Yuro, Esq.

 8    For Defendants Hanmi, et al: Mark Boland, Esq.
                                   SUGHRUE MION, PLLC
 9
                                   Mayra Tarantino, Esq.
10                                 LITE DEPALMA GREENBERG, LLC

11                                 John Scherling, Esq.

12
      For Defendants Mylan, et al: Shannon M. Bloodworth, Esq.
13                                 PERKINS COIE, LLP

14

15

16

17

18

19

20

21

22

23

24

25
```

1     (Proceedings commence at 11:05.)

2          THE COURT:  Good morning.  How is everyone.

3          COUNSEL:  (Via telephone) Good morning.  Good

4     morning, Your Honor.

5     (Participants confer.)

6          THE COURT:  We're on the record in <u>Astra v. Hanmi</u>

7     and <u>Astra v. Mylan</u>, 11-760 and 12-1378, respectively.

8          So before I begin, I have two questions, I guess.

9     One is -- or two things to point out.  Obviously, we are on

10    the record, so please be careful about what we say regarding

11    information that we don't want disclosed.

12         And then the other thing is: I do recognize that I

13    have to two defendants who are in separate cases.  So, Mr.

14    Rank, I need to make sure that there's nothing that I disclose

15    that either defendant wouldn't want the other to hear.  I

16    don't know if that goes to you or to the Hanmi and Mylan

17    defendants.

18         So is there anything off the top of your head -- I

19    don't intend to talk about anything specific, in terms of any

20    of the claims or defenses that are being raised.  But is there

21    anything that I should not be touching upon, such as the

22    deadlines for the thirty-month stay?  In either case, is that

23    something that's private?

24         MR. RANK:  This is Mr. Rank.  I think the thirty-

25    month stay deadlines are private or confidential --

1          THE COURT:  Okay.

2          MR. RANK:  -- as reflected in Mr. Flaherty's letters

3    to Your Honor.  (Indiscernible) information which we

4    understand is confidential to Hanmi, as well as some

5    information that's confidential to Mylan, although I don't

6    think it will be necessary to specifically get into the

7    details, since they're set forth in the letters to Your Honor.

8          THE COURT:  Okay.  So let me just caution Hanmi and

9    Mylan, if there's anything that you get the sense I'm going

10   down a path you don't want me to go down, you have the right

11   to scream at me.  Okay.  So ...

12         MR. BOLAND:  Your Honor, Mark Boland for Hanmi.

13   Just briefly.

14         We agree with Mr. Rank on the deadlines for the

15   thirty-day.

16         In the letters that we submitted, as well as AZ

17   letters, there's confidential information concerning FDA

18   status, we'll say.

19         THE COURT:  Okay.  I won't discuss that, either.

20         MR. BOLAND:  Yes.

21         THE COURT:  Okay.

22         MR. BOLAND:  That's the issue we're concerned about

23   --

24         THE COURT:  Okay.

25         MR. BOLAND:  -- pretty much.

1          THE COURT:  Ms. Bloodworth, anything other than

2     those items from your client's perspective?

3          MS. BLOODWORTH:  No, Your Honor.  And Mylan doesn't

4     have any concerns with sharing any information with outside

5     counsel for Hanmi.  So if anything should arise, we would just

6     ask for perhaps portions of the record to be sealed after the

7     call.

8          THE COURT:  Okay.

9          MS. BLOODWORTH:  There is no sensitive information

10    that can't be shared.

11         THE COURT:  All right.  In terms of Hanmi, we are,

12    obviously, awaiting for a decision on the claim construction.

13    I can tell you that Judge Pisano is working on that.  I can't

14    promise you when it will be out, but I do think within short

15    order.  I wouldn't be surprised if you get that decision by

16    the end of December, so it is on the front burner.

17         I also have, what is on the docket, is the motion to

18    amend claim construction.  Without getting into particulars,

19    being entirely candid with you, while that is normally

20    something -- I'm sorry, motion to amend the contentions.  I

21    misspoke.  While that's normally something that I handle,

22    given that claim construction ruling is being decided now, I

23    am not sure whether Judge Pisano will take that upon himself

24    or whether it will be ours.  We are in discussion about that.

25         So in light of those two items, and particularly the

1    fact that we don't have a claim construction, candidly, I

2    don't see how we could hold anyone to this schedule that we

3    have in place.  It's just not realistic that December 7th,

4    which is right around the corner, even though I know it's been

5    -- it was raised prior, Superstorm Sandy threw us off track.

6    I was also out for a few days following that because of an

7    awful cold.  And I have laryngitis, which is every lawyer's

8    dream.  But having said that, we have to amend the schedule.

9          I want to also inform you that, while there was

10   discussion with the District Court about a trial for Hanmi in

11   April, that's not a firm date on their calendar.  Judge Pisano

12   is always anxious to deal with these ANDA cases as soon as

13   possible because the thirty-month stay starts to loom.  And if

14   he can avoid a preliminary injunction motion - that's always

15   on our radar.

16         So having said that, we've got to deal with the

17   schedule.  And my thought is, especially in light of the fact

18   that I'm really hopeful that you will have a claim

19   construction decision soon, as an aside, I don't know how the

20   contention -- amendment of the contention issue is going to

21   impact.

22         But I'm wondering if what I can have you folks do is

23   agree upon a schedule that gives you a period of time

24   following a decision to wrap things up.  Generally, I'm not

25   fond of the "within twenty-one days or thirty-day" type

1    schedule because it just is too fluid for me.  I usually

2    prefer firm dates.  But in this situation, maybe that's

3    something that I can send you folks off to agree upon; again,

4    understanding that we might have a glitch, depending on what

5    happens with the amendment of the contentions.  And I

6    recognize there's a whole host of issues with that, as to the

7    parties' mind set as to whether or not that's going to impact

8    claim construction ruling at all.

9              So with that in mind, or with that intro, let me

10   hear from you.  I guess would it be you, Mr. Rank, on behalf

11   of Astra?

12             MR. RANK:  Thank you, Your Honor.

13             I think that, given what Your Honor just said -- and

14   I would be hopeful that the parties could jointly sit down and

15   work out a schedule.  There is already a schedule in place in

16   the Mylan case, which Your Honor so ordered in mid-November,

17   as you know.

18             THE COURT:  Yes.

19             MR. RANK:  And plaintiffs are seeking to get the

20   same schedule in the Hanmi case.

21             Now I would suggest that -- I guess I heard Your

22   Honor say that, given the circumstances in this case, that

23   perhaps a non-firm date might be acceptable to the Court, in

24   terms of when we get -- when we start expert discovery?

25             THE COURT:  Yes.  I actually have two thoughts:

1        One is that; and frankly, perhaps mirroring what

2    time frame you folks had in the last order that I entered.  I

3    think it was something like less than -- even less than

4    twenty-one days for experts, following the close of fact

5    discovery.  So if you were to use something like that, and

6    then all of the other dates, build them out from there.

7        Now the other option would be to have an almost

8    immediate telephone call following the claim construction

9    ruling to determine what impact that has on the schedule.

10        And I also -- in addition to the motion to amend,

11    which I've mentioned, I also know that I have to deal with the

12    deposition issue that Hanmi has raised, which might add

13    another wrench into this -- this discussion.

14        But long-winded way of saying, yes, Mr. Rank, here,

15    I would, if the parties wanted to, entertain something along

16    the lines of within twenty-one days following the ruling on

17    claim construction, you will propound expert reports, or

18    thirty days or the like, and then build everything else out.

19        We may need to shorten some of the time frames, if

20    you want to get this to a spring-type trial.

21        And I should also have mentioned that, at this

22    juncture, it does not appear that Judge Pisano is inclined to

23    require that you be on the same schedule with Mylan, or that

24    they be consolidated.  That's something that is really up to

25    him, I think, at this stage, but -- so I'm not looking to have

1    Astra mirror the Mylan schedule for that reason.  Does that
2    make sense?
3              MR. RANK:  I thought I heard -- this is Mr. Rank
4    again.  I thought I heard Your Honor say that Judge Pisano is
5    inclined --
6              THE COURT:  No, is not inclined.
7              MR. RANK:  All right.  I just --
8              THE COURT:  I'm not getting any sense right now
9    from Judge Pisano that he's looking at these cases and
10   thinking that it makes -- entirely makes sense for them to be
11   tried together.  He could certainly change his mind.  But
12   frankly, I think with the claim construction where it is and
13   the amendment of the contentions, where they are, we've just
14   got to have the dust settle, and perhaps have that issue
15   revisited in early 2013.
16             So again, I'm not saying at this point that you
17   should -- that Hanmi should look to or is being instructed to
18   be on the same schedule with Mylan for consolidation purposes
19   at all.  I think you need to view Hanmi as an entirely
20   separate case, as it is at this juncture.
21             So let's focus on what you need to do, and not in a
22   vacuum, because now we have real issues.  Nobody wants to have
23   a duplication of effort.  And if you get expert reports, and
24   then your claims are construed in a different way, what do we
25   do?  It just becomes a mess and a nightmare, and perhaps more

1  briefing on why your expert reports should be allowed to

2  amend.  And that's just a waste of time, energy, and money for

3  all of you.

4      So again, trying to be practical, I think if we get

5  a schedule that is based on when you get a ruling, with the

6  footnote that outstanding contention issue might cause a

7  wrinkle in that, that would be probably be the best course.

8      But I'm happy to defer to you folks.  If you want to

9  have a schedule in mind in principle, or even on the -- on the

10  record, an order entered, but with the right to tell me and

11  ask me for an emergent call once you get your ruling, to talk

12  about what that does; whether it's your ruling on claim

13  construction or whether it's a ruling on the amendment to the

14  contentions.  I'm happy to do that.

15      MR. RANK:  Your Honor, this is Mr. Rank again.

16      MR. BOLAND:  Your Honor, this is Mark Boland.  Your

17  Honor, may I comment?  Mark Boland on behalf of Hanmi.

18      THE COURT:  Sure.

19      MR. BOLAND:  We appreciate the Court's comments on

20  those points.  And first of all, we'll be happy to confer with

21  Mr. Rank and his colleagues about the schedule.

22      But you know, in terms of where we are, the big

23  picture, you know Hanmi has discussed with Judge Pisano on

24  several occasions the issue of the trial, in light of June

25  29th, '13 thirty-month stay.

1          THE COURT:  Okay.  Mister --

2          MR. BOLAND:  And --

3          THE COURT:  Mr. Boland, do you know that you've just

4   mentioned something that, I guess, is your right to mention.

5   But I don't know if you want that --

6          MR. BOLAND:  I -- sorry.  I said at the outset, Your

7   Honor, that date is not confidential.

8          THE COURT:  Oh, I'm sorry.  I missed that.  Okay.

9   Okay.

10          MR. BOLAND:  I just said it was FDA status that was

11   --

12          THE COURT:  Okay.

13          MR. BOLAND:  -- (indiscernible).

14          And so, you know, in a discussion with Judge Pisano

15   last April, and then again in May following the

16   (indiscernible), and in June following a proceeding on some

17   summary judgment motions, you know, Judge Pisano told us we

18   could have the trial in April, in recognition of the

19   expiration of the thirty-month stay.

20          And what he even told us is that's cutting it a

21   little close, closer than he likes, but you know, if we have

22   to, they'll hustle, and they'll get us a decision.  That's his

23   practice, they've done it before --

24          THE COURT:  Right.

25          MR. BOLAND:  -- and they'll do it here.

1          THE COURT:  Okay.  Let me just jump in and tell you

2     that you're not on his calendar as a firm trial date.  And let

3     me, though, also assure you that Judge Pisano will do

4     everything he can to accommodate all of you, especially in

5     light of the thirty-month stay.

6          I probably have said this to you folks before, but

7     let me just emphasize that there was a situation of a number

8     of years ago now, where a thirty-month stay expired in a case

9     at the end of August.  It was not on my radar in the sense of

10    the preliminary injunction motions being filed.  And the long

11    and the short of it is -- I'm sure you've experienced -- we

12    had preliminary injunction motions being filed and when Judge

13    Pisano saw them, although I knew the thirty-month stay was

14    coming up, I just didn't think to talk to him -- I'm being

15    entirely candid -- and let him know what was happening and

16    why.  And what Judge Pisano simply said is, well, I'm ready to

17    try the case in August, let's just do that.

18         So I have learned from that experience -- and

19    although it did nothing to me personally or professionally,

20    the fact that all of the parties had to expend all of the

21    time, energy, and money for the preliminary motion -- Judge

22    Pisano was actually reading through those papers, and then

23    everyone -- again, not me; I got to go to the beach --

24    everyone else was sitting in Trenton in August.  I don't ever

25    want to have that happen again.

1    And I'm telling you candidly, I didn't get any

2 fallout from Judge Pisano.  The lawyers might have been

3 talking about me under their breath, but we do learn.  And I

4 don't want to, again, deal with things ever in a vacuum.  So

5 that is a very tortured story, and perhaps more detail about

6 my professional life than you need to know.

7    But we're all really mindful of the thirty-month

8 stay, preliminary injunction motions etc.  Judge Pisano is

9 terrific about working with counsel to get things tried

10 expeditiously and get opinions out.

11    I just want to be clear that you are not written in

12 stone for April.  If this case has to get tried at the end of

13 April or in May, and we have -- still have that issue with the

14 thirty-month stay looming, then Judge Pisano is going to do

15 what he needs to do to try to reach that date.

16    But again, if we were -- if this case was in a

17 different posture, and I was getting a request for an

18 extension, when we already had claim construction done and

19 there wasn't this motion to amend, we'd be having a different

20 discussion.  But I just don't see, Mr. Boland, how I can hold

21 Astra's feet to the fire or yours, tell you to get expert

22 reports done, even if I extended them by two weeks from now,

23 when we don't have rulings, and you're going to have to

24 potentially have a do-over.  So I am just --

25    MR. BOLAND:  Yeah.

1        THE COURT:  I'm just encouraging you to be mindful

2   of all of the dynamics, including the looming thirty-month

3   stay, give me a schedule.  And then, once I get what will

4   hopefully be a final schedule, then I and/or, you know, all of

5   us collectively can go to Judge Pisano and then say, we want a

6   firm date, because this looks like it's happening.

7        So I don't know if that helps you at all, Mr.

8   Boland, but I can -- I can assure you that you are not written

9   in stone in his calendar.  And even if you were, given this

10  situation, if I needed to go to him and say that we're bumping

11  it by a few weeks or a month, then that's something that he

12  would do.  He wants you ready.  And we don't want lots of

13  issues percolating unnecessarily because we have moved you

14  along too quickly, and now we have to have things amended.

15       MR. BOLAND:  Thank you very much, Your Honor.  I

16  appreciate those comments.  And that clarifies the window that

17  I think we're targeting then, for us to come back with a

18  schedule that would be subsequent to the Court's ruling on

19  claim construction.

20       THE COURT:  Okay.

21       MR. BOLAND:  It's very helpful.

22       But in terms of the Mylan case, Your Honor, we

23  completely agree with the, at least tentative sentiments with

24  Judge Pisano that there's no need for us to be on the same

25  track.  And we've put this in a couple of letters to the

1    Court, and I won't repeat everything.

2           But in a nutshell, there's two out of five patents

3    in common.  And even as to those two patents, we have a

4    different product than Mylan has.  Okay?  So we have non-

5    infringement issues that are not present in Mylan case.  That

6    means only invalidity of two out of five patents.

7           And even as to invalidity defenses, we haven't been

8    consolidated with Mylan.  We did coordinated a couple of AZ

9    and Brenner depositions with them.  But we certainly haven't

10   not been consolidated and working on joint defenses.  We have

11   different experts.  We don't even know their invalidity

12   contentions (indiscernible).  So it really makes no sense to

13   even consider consolidating this for trial because it would

14   essentially be two separate trials.

15           THE COURT:  Okay.  Well, I -- I appreciate your

16   emphasizing what you've stated in your correspondence.  And as

17   I said, I have just gotten no indication from Judge Pisano at

18   this point that he's not anxious to consolidate.  Certainly,

19   that could change; and if so, you'll be among the first to

20   hear.  But I think for now, that issue is really not on our

21   plate.

22           So in terms of your schedule, you and Mr. Rank can

23   talk about what makes sense, again, leaving in place the idea

24   that you can reach out to me for a quick turnaround with a

25   conference call, and I promise you I will get you folks on the

1   phone if we have to talk about the schedule, if there's any

2   glitch.

3           MR. RANK:   That's what I was going to suggest, Your

4   Honor.   This is Mr. Rank again.   Taking up Your Honor's offer

5   to suggest that the parties get in touch with the Court and

6   with Your Honor immediately after the claim construction

7   ruling that's -- that's in front of Judge Pisano presently.

8   That might give Your Honor or Judge Pisano, perhaps, the

9   opportunity also to resolve the motion to amend contentions.

10          Frankly, if the schedule gets -- as we indicated in

11  our opposition, if the Hanmi schedule gets extended by a

12  sufficient period of time, we don't have any objection to the

13  motion to amend contentions.

14          The one issue that, in addition to the opinion that

15  Judge Pisano was working on, on the Hanmi Markman issues,

16  there is what we consider to be a new claim construction issue

17  raised by Hanmi's motion to amend contentions.   There's a

18  difference between the parties, such that there's no

19  discussion about a schedule.   We've proposed one, but they

20  don't think it's a claim construction issue, so Hanmi is

21  unable to agree to any schedule, I guess.

22          Perhaps -- I guess what we need is some input from -

23  - from Your Honor or from Judge Pisano as to who to write

24  there.   But perhaps all of this can be discussed in a

25  conference call immediately after Judge Pisano's ruling on

1    claim construction, during which -- or in preparation for

2    which the parties can attempt to reach a schedule and propose

3    one to Your Honor.

4            THE COURT:  Well, let me ask this, though, Mr. Rank.

5    Is there anything that you could be doing, in terms of fact

6    discovery, if that's the issue, with the amendment to the

7    contentions, while we're waiting for a ruling, that would then

8    alleviate your objections?

9            So what I'm hearing is that you view the amendment

10   to require additional discovery because new issues were

11   raised; Hanmi says, not so.  Your position, Astra's position

12   is, though, that if you have additional time to do this

13   discovery, then you wouldn't have an objection to the

14   amendment.  And if that's right, can you accomplish and

15   proceed with the discovery on the amendments, regardless of

16   how the claim construction ruling comes out?  Since it's not

17   going to come out tomorrow, can you work on that during the

18   month of December, and then alleviate your --

19           MR. RANK:  The answer is -- the answer is yes, Your

20   Honor.  We're certainly willing to have a dialogue with Hanmi

21   about that -- what we perceive to be that new claim

22   construction issue.  It's hard to have a dialogue with someone

23   who doesn't want to talk to you, however.

24           THE COURT:  Okay.  Well --

25           MR. RANK:  But it's certainly we can, and I think

1   hopefully work out with them, and get our positions maybe a

2   little more firmly set.

3          THE COURT:  Okay.  Well, that's what I would like

4   you to do, meet and confer about a proposed schedule.  You

5   don't have to send the schedule into me for docketing.  But if

6   you'd like to submit a proposal -- because I don't want the

7   discussion to wait until we get a ruling on claim

8   construction.  I'd like you to consider best case/worst case

9   for the decision and how it affects what your expert will have

10  to do.  Maybe in terms of time, it won't have any impact what

11  Judge Pisano's ruling is on the schedule, but perhaps it's

12  just a matter of whether it's three weeks or thirty days.

13         So if you can have that discussion.  And whether you

14  want to send it to me as an informal proposal, just letting me

15  know what you're thinking, or just share it amongst yourselves

16  is -- doesn't matter to me.  But I won't docket it as a firm

17  agreement until we have that post-decision discussion.

18         The other thing is, certainly, if you can, meet and

19  confer about addressing giving Hanmi -- the instruction that

20  Hanmi should address AstraZeneca's concerns, and perhaps agree

21  to engage in the additional discovery that would eliminate

22  their objection, even though Hanmi obviously is saying, we

23  don't think that it changes things.  But if you can come up

24  with an agreement and get that done, so that we're not wasting

25  more time because, obviously, if there is a ruling that says

1    they can amend and there is a request by Astra to conduct more

2    discovery, then that's more delay, not only for you folks

3    writing, but for me or Judge Pisano deciding, and then you

4    folks getting the work done.

5            So if you can come up with an agreement that would

6    eliminate that issue, especially because we're not having

7    expert discovery conducted now and it could potentially be a

8    couple of more weeks, if not longer, that would be terrific.

9            UNIDENTIFIED:  (Indiscernible).

10           UNIDENTIFIED:  (Indiscernible) Your Honor, there's

11   one issue --

12           THE COURT:  Okay.  Can I just jump in one second?

13           Ms. Bloodworth, I know I've asked you to be on the

14   phone.  Very little of this applies to you.  Do you want to

15   still stay on?  I just have the one issue with you folks in

16   Mylan, and that goes to whether or not you have any objection

17   to Astra's amendment of the complaint, because no opposition

18   is filed.  Again, I'm happy to have you stay on the phone, but

19   I'm really mindful of your time, and I don't know if there are

20   any Mylan issues that you want to address.  If so, you can sit

21   tight; if not, that's the only thing that I have.

22           MS. BLOODWORTH:  Thank you, Your Honor.  This is

23   Shannon Bloodworth.

24           We -- and first of all, thank you for inviting us to

25   be on the call.  We do not have an opposition to AstraZeneca's

1   motion to amend at this time.

2          We -- I would like to put in a placeholder, since

3   there has been a lot of discussion about the scheduling in the

4   Mylan case, which -- in relation to the Hanmi case.  And that

5   is to say that we do have two patents in common

6   (indiscernible) litigate defenses, and that does materially

7   affect Mylan's case in this matter, and certainly, obviously,

8   at trial before Judge Pisano on those issues about Mylan's

9   involvement, is something of concern to Mylan.

10         My understanding of the Hanmi case is that there is

11  quite a lot of fact discovery let to be accomplished.  So I

12  would just like to, if possible, put down a placeholder for

13  participating in the call after the claim construction

14  decision is issued, to see if it doesn't make some sense to

15  have the two patents that are in the Mylan case on the same

16  track as the Hanmi case.

17         THE COURT:  Okay.

18         MS. BLOODWORTH:  It's sufficient (indiscernible) you

19  know, we wouldn't have duplicate expert reports, expert

20  depositions, et cetera, in that manner, and certainly would,

21  you know (indiscernible) at least partial of a duplicative

22  trial.

23         THE COURT:  All right.

24         MS. BLOODWORTH:  So that's really the only -- only

25  thing I wanted to raise with Your Honor.

1          THE COURT:   Okay.   So then what I will do is, first

2     all, we'll take care of then Astra's motion to amend the

3     complaint, and we'll approve that; probably get it on the

4     docket today or tomorrow.   We'll grant that, noting that Mylan

5     has no objection.

6          And then in terms of our next placeholder for Mylan,

7     instead of setting another telephone call, what I will do is

8     include in our notes that, when we do circle the wagons with

9     Astra and Hanmi after the claim construction ruling, we will -

10     - we're anticipating having a phone call, and then we'll

11     include you on that, and then we can go from there.   Does that

12     make sense for you?

13          MS. BLOODWORTH:   Thank you, Your Honor.

14          THE COURT:   Good.

15          Okay.   Before I let you go, anything you wanted to

16     raise as to Mylan, other than those issues?

17          MR. RANK:   As to Mylan, no, Your Honor.   There is

18     the -- bear with me, I apologize.   One issue that could impact

19     the length of additional fact discovery we would have with

20     Hanmi, is the pending Hanmi motion before Your Honor with

21     respect to the --

22          THE COURT:   Depositions.   Okay.   I can tell you that

23     I am allowing them to conduct depositions.   I can't -- simply

24     don't read that order that you folks entered -- the

25     stipulation that you entered into on July 19th as an entire

1   waiver of Hanmi's rights to depose these individuals.

2          I want to limit them, as Hanmi has said, to the

3   "issues unique to Hanmi's case." And while I'm not limiting

4   them in number right now, that's another issue that I want you

5   folks to confer on because I think it's a page and a half or

6   so of deposition -- individuals who were deposed. And I'm not

7   suggesting that Hanmi gets a run at all of them. So Hanmi

8   needs to select the primary individuals who they want to

9   depose. And if, in light of my ruling, Astra has an

10  objection, let me know.

11         Again, I want the scope limited. I know it's often

12  hard for us as attorneys to start in the middle. We tend to

13  begin at the beginning, going through credentials and the

14  like, or those types of questions. And Mr. Boland, you really

15  have to constrain yourself, or whoever is conducting the

16  deposition, to go just to the meat of whatever Hanmi's issues

17  are. I don't want any of that throat-clearing or repetitive

18  or we're getting warmed up. I want them focused and concise

19  and limited only to the essential individuals. So you have to

20  make that decision, have a chat about that.

21         And again, I know this is a tough time of year. But

22  getting them done as quickly as possible, perhaps while and

23  before we get a decision on this claim construction, would be

24  also very, very helpful.

25         Is there an issue as to location -- or I guess we

1    need to see who they are.

2         UNIDENTIFIED:  Your Honor, just one point of

3    clarification, Your Honor.

4         UNIDENTIFIED:  (Indiscernible).

5         UNIDENTIFIED:  Are you saying that the stipulation

6    remains in force, and that Astra can use the prior dep as per

7    the stip. --

8         THE COURT:  Yes.  Oh, yes.  I'm not -- yes, I am --

9    I am not mooting the stipulation.  I am just finding that it

10   doesn't directly address whether or not it eliminates Hanmi's

11   right -- or I don't read it as specifically saying that Hanmi

12   cannot re-depose some of these individuals as to issues in its

13   case.  But all of those individuals, you can, pursuant to the

14   Rules of Federal Procedure, I read it as saying, that you can

15   introduce that testimony at trial.  That's what your

16   stipulation says, right?

17        So let me go back to Ms. Bloodworth, because I don't

18   want to infringe upon her right to go have an early lunch, if

19   there is such a thing in your world.  We're good?

20        MS. BLOODWORTH:  Yes, Your Honor.  I would just like

21   to say that in the Mylan case, we do not have such a

22   stipulation with the AstraZeneca plaintiffs, and so I would

23   like to coordinate also on those depositions.  And we would

24   also agree to keep our questions very targeted to those

25   individuals.

1      THE COURT:  Okay.  I don't know if you're aware of

2  the docket number, but it's -- I think it's 232 in the <u>Astra</u>

3  case.  I don't believe that it's sealed, so you might be able

4  to look at it, if you haven't already, see who the individuals

5  are.  And you can certainly ask Astra and Hanmi to keep you in

6  the loop as to who's going to be deposed by Hanmi.  And if

7  that -- if you can work out an agreement as to participating

8  in those deps, that would be great for your client, and for

9  Astra, as well.

10      Okay.  So I leave it to you, Ms. Bloodworth.  Ms.

11  Bloodworth, if you want to sign off, you're welcome to; if you

12  want to remain, that's fine, as well.  I appreciate your

13  participation, and we'll include you in the next call.

14      MS. BLOODWORTH:  Thank you, Your Honor.  I will sign

15  off.

16      THE COURT:  Great.  All right.

17      MS. BLOODWORTH:  Have a good day, everyone.  Bye.

18      THE COURT:  Let me go back, Mr. Rank.  Was there

19  anything that I missed on your end?  I know we were talking --

20  continuing to talk.

21      MR. RANK:  No, Your Honor.

22      THE COURT:  Okay.  Mr. Boland?

23      MR. BOLAND:  Yes.  A couple of points, Your Honor.

24      First, getting to your last point first, with the

25  additional of these depositions that were in controversy.  We

1  appreciate your comments, and we'll keep things focused.

2        Just to be clear, we have deposed a couple of the

3  people on that list within the time of fact discovery.

4  There's only two that are at issue, in our view, that we can

5  ask for clarification.

6        One is named Linberg (phonetic) (indiscernible)

7  patents, and we understand he retired from AZ earlier this

8  year.

9        There is a party named Cole, and he's in Germany,

10  and he's the named inventor on a prior (indiscernible) patent.

11        So -- but as to (indiscernible) AZ is proffering

12  their testimony.  We would ask that AZ make those two people

13  available for depositions, if they want to use the

14  transcripts.

15        THE COURT:  Uh-huh.

16        MR. BOLAND:  In other words, it's their choice.

17  They can make them available, and we'll take the focused

18  depos; or if they choose not to, the transcripts just won't

19  come in --

20        THE COURT:  Okay.

21        MR. BOLAND:  -- and we won't have a need for the

22  depos.

23        THE COURT:  And I thought I read somewhere in the

24  papers -- and frankly, I wasn't focusing on this part of it --

25  but that it is Hanmi's position that that was an agreement

1    that Astra had entered into at some point to produce them in

2    Washington.  But Mr. Rank, what are you thinking, or do you

3    need to talk to your client?

4              MR. RANK:  No, I don't need to talk to my client.

5              With respect to Cole, he doesn't work for

6    AstraZeneca; he always worked for a third party.  Astra never

7    controlled him, per se.  He was represented, in fact, by

8    different counsel at the dep -- at his prior deposition.  And

9    frankly, it was never our intent to entering in -- when

10   discussing the stipulation with Hanmi, that a condition of the

11   use of the prior depositions was Hanmi's right to take those

12   depositions on new dates.  In fact, I don't think it was

13   Hanmi's intention, either, because they agreed not to refile

14   old ground that was covered by the prior depositions.

15             But we can look -- I don't -- we can contact these

16   people, perhaps again.  Linberg is a retired AstraZeneca

17   employee.  Cole has never been an AstraZeneca employee.  I'm

18   not so sure that, as to Cole, we have any sway in the matter.

19   And any deposition of him, to the extent it gets scheduled,

20   might have to be in Germany.

21             THE COURT:  All right.  Find that out.  Obviously,

22   with Cole, you mentioned you had an attorney that you can

23   contact, so see what the attorney's position would be.  And

24   then do your due diligence with Linberg to contact him and

25   see.  And if you could let Hanmi know in quick turnaround

1    whether or not they will agree to coming to the tri-state

2    area, and if you can let me know in the next couple of weeks,

3    that would be great.  And I say "couple of weeks" in the event

4    that we need to give Mr. Cole time to talk to his attorney and

5    the like.  And then just shoot me a letter, and let me know

6    where that stands.  Frankly, whether or not I can compel Astra

7    is a -- to produce them is a question; to produce them here in

8    the United States.

9            The other thing, certainly, Mr. Rank, find out if

10   they're amenable to being deposed in short order, without

11   going through the Hague Convention; and if so, is there an

12   agreement that they would come to the United States; and if

13   not, if they would agree to be deposed, but perhaps in

14   Germany, or I don't know if there's someplace else that would

15   be more convenient.

16           And let me through in the third:  Depose by video.

17   And I recognize that that's a huge problem, often, for the

18   person taking the deposition.  But I want to have all of those

19   questions answered as to their mind set, when this is lined up

20   for me, because I don't want to have to go back to you all and

21   ask for more information and cause more delay from my end.

22   Okay?

23           MR. RANK:  We understand.

24           Your Honor, I guess I should be -- to be totally

25   frank, preliminarily, it appears that Dr. Cole, through his

1    attorney -- and they happen to be new attorneys; it gets more

2    complicated -- he's not inclined as of now -- we think is not

3    inclined to appear again anywhere for a deposition.

4            But at Your Honor's suggestion, we will make another

5    attempt and discuss the matter with -- with Hanmi's counsel,

6    and let the Court know --

7            THE COURT:  Okay.

8            MR. RANK:  -- where things stand within the next

9    couple of weeks.

10           THE COURT:  So maybe - - if you offer to Cole's new

11   attorney that the Judge has suggested a hat trick, if they

12   understand hockey analogy, of options coming voluntarily to

13   the United States, sitting for a deposition voluntarily in

14   Germany, or sitting in Germany with counsel present and

15   someone from Hanmi flying over, or doing a video or telephonic

16   deposition.  Obviously, I understand from Hanmi, without you

17   even saying it, that those last two are not what you're

18   looking for.  But I would like to know what that person is

19   thinking and figure out what you need to do, what the next

20   step is.

21           And then Linberg, when was the last time you were in

22   touch with him?  Because his deposition was taken in '08.  Do

23   you know offhand?

24           MR. RANK:  He retired -- he retired from AstraZeneca

25   earlier this year.  But we will -- we'll reach out to him --

1          THE COURT:  Okay.

2          MR. RANK:  -- and -- and see what we can do there.

3    We'll discuss it with Hanmi's counsel and let the Court know

4    where things stand within the next couple of weeks, as Your

5    Honor suggested.

6          THE COURT:  Okay.  You can tell him New York is

7    wonderful this time of year.  He might not mind coming to the

8    east coast.

9          MR. RANK:  Oh, yeah.  They're lighting the Christmas

10   tree tonight.

11         THE COURT:  That's right.  There you go.

12         All right.  Mr. Boland, anything else from you?

13         MR. BOLAND:  (Indiscernible) Your Honor.  I would

14   note that AstraZeneca has offered Cole as its own witness in

15   proceedings in Europe.

16         THE COURT:  Uh-huh.

17         MR. BOLAND:  So we -- they at least have had that

18   type of control or relationship with him in the past.

19         THE COURT:  Okay.  Well, I'm not expecting this is

20   going to be an easy issue for either of you, meaning that

21   either of you is going to walk away readily.

22         The other thing that I will often ask, other option

23   that I will often ask individuals to consider is whether or

24   not you can hold off on doing the deposition until the time of

25   trial, so that can be accomplished before the person

1   testifies.  So that's something that I'd want to hear from

2   you, Mr. Boland, once we hear what Astra relays regarding

3   their willingness.

4         And assuming that they're not willing to conduct a

5   deposition by any of those means -- and I do -- will say that

6   I do recognize that these depositions, you might say, are

7   important for your expert reports.  But I throw that out there

8   anyway because it's something that we can often employ to

9   resolve this kind of issue in other cases.

10         But then again, these ANDA cases are very, very

11   special, as I'm continuing to learn.  So that's just a seed I

12   will plant, and these are things that we can talk about once

13   we hear from Astra.  Good?

14         MR. BOLAND:  Thank you, Your Honor.  It's Mark

15   Boland.

16         Just Mr. Rank made some comments previously about an

17   alleged claim construction issue that was raised by our motion

18   to amend that I didn't get a chance to comment.  So if you'll

19   just hear me for a moment.

20         Your Honor was couching it in terms of fact

21   discovery, that Mr. Rank has allegedly identified pertinent to

22   that issue, that could perhaps be done in December.  And I'd

23   just like to clarify the record.  AstraZeneca hasn't

24   identified any fact discovery on that point at all.  So we

25   don't think that that -- you know, there's a need for anything

1    there that hasn't already occurred.

2         The issue that we're seeking there is amendment to

3    assert infringement and a modest supplementation of

4    (indiscernible) validity.  And the issues in terms of our

5    product have been embedded in prior depositions and in the

6    papers of record.

7         So the issue that Mr. Rank raised is, I think he's

8    suggesting that the Court set up and then conduct yet another

9    Markman proceeding, which we totally object to.  Both of these

10   patents have been construed by Judge Pisano in the prior

11   (indiscernible) case.  And then in our case, we've briefed a

12   whole bunch of issues, and the Court has been working on them,

13   and we know (indiscernible) issues under submission.

14        So for Mr. Rank to be saying we should set up yet

15   another entire briefing schedule (indiscernible) there's just

16   no room for that.  And our motion clearly does not raise that

17   issue.

18        THE COURT:  Uh-huh.

19        MR. BOLAND:  Our motion is premised on a simple

20   (indiscernible) as to whether (indiscernible) are inside or

21   outside the scope of the claim.  And when AZ filed the suit,

22   they took the position that they're covered by the claim.  Our

23   position in the motion to amend is -- and I understand we're

24   not getting into the details today, but is that the litigation

25   record has changed based on AZ's own position.

1          THE COURT:  Okay.  Let me just jump in.

2          Mr. Rank -- and again, I wasn't set to -- as Mr.

3    Boland noted, we weren't really having a discussion about that

4    motion.  I just wanted to make the suggestion that, if there

5    was discovery that you needed to do, and if it was of a fact

6    nature, or whatever nature, that could be conducted now, let's

7    get it done.  Would there be this argument that we needed to

8    have a do-over of the <u>Markman</u>, or do you even need to see what

9    the Markman rulings are?  Do you know?

10          MR. RANK:  The point -- if the point, Your Honor, is

11   -- what I was alluding to that could be done, say, in December

12   -- in fact, we proposed it to Hanmi, but they have rejected

13   any notion of it.  The point is that we could go through our

14   own exchanges about -- you can't construe a common claims

15   (indiscernible) without reference to particular terms in a

16   claim.  We -- the point is we think -- in their motion to

17   amend the contentions, they're arguing claims (indiscernible),

18   claims (indiscernible), claims (indiscernible) throughout

19   their papers.  It's a claim construction issue.  They

20   injected it into the case by their motion to amend

21   (indiscernible) decided in one way, shape, or form.  But we've

22   been unable to get them to even exchanging positions because

23   they claim it's not a claim construction issue.

24          THE COURT:  Okay.  But if you were to get the

25   additional time that you needed, which is the one, sort of a

1    *quid pro quo*, that you would consent to the amendment if you

2    had time, is built into that the concept of them being able to

3    go back and make an argument regarding claim construction?  Is

4    that what I'm hearing?

5            MR. RANK:  Yes.

6            THE COURT:  Okay.  All right.  I don't know if that

7    alleviates one issue, but -- and if that would make sense to

8    do it that way.  I mean, I'm thinking out loud.

9            Well, let me push back again and just say I'd ask

10   you folks to have your meet-and-confer on that issue.  If you

11   could even eliminate whether or not there is new discovery to

12   be taken or the amendment is allowed, I don't know if Astra is

13   willing to take the risk that they agree to the amendment

14   without an agreement that you can have a second bite at the

15   apple, if you will, or raise this with Judge Pisano in terms

16   of claim construction, or if you want to just -- as you

17   probably have already said in your papers, that you're willing

18   to provide it.  So just let us know that.

19           But again, I'm just trying to -- if there's a way of

20   moving you folks along, so that doing the discovery on any

21   issue is done.  And then if we just get the substantive legal

22   or trial schedule issues raised before us, that would be

23   great, rather than waiting for a decision and then going ahead

24   and doing this discovery.

25           It might be for naught if the amendment is not

1  permitted.  But frankly, given the time frame that we're

2  dealing with, that's my preference, and I don't say that

3  lightly.

4            So I don't know if that helps you, but I've got --

5  I've got an image of what the claim construction issue will

6  entail.  If you folks think that that's something that's ripe

7  for me to revisit after you have a chat, and you can't come to

8  an agreement, or if you have -- it's morphed into something

9  different, then raise it with me, even while Judge Pisano is

10 issuing his order; I'm happy to have you do that.  Don't wait

11 if you don't think it needs to wait.  I don't want to be

12 holding you up.  Okay?

13           UNIDENTIFIED:  We'll have that discussion among

14 counsel, Your Honor, and hopefully we'll get resolution.

15           THE COURT:  Okay.  All right, guys.  I know you know

16 where I am, and we've got a lot of sort of balls in the air.

17 If any of them come down and are ripe for me to deal with, let

18 me know, and we'll do what we need to do on this end to move

19 you along, and not be an impediment to the best of our

20 ability.  Okay?

21           If I don't talk to you in this December --

22           UNIDENTIFIED:  Thank you, Your Honor.

23           THE COURT:  -- holiday season, have a good one.  Be

24 well.

25           UNIDENTIFIED:  You, too.

1          THE COURT:  Okay.  Thanks.  Bye-bye.

2          UNIDENTIFIED:  Thank you, Your Honor.

3     (Proceedings concluded at 11:54 a.m.)

4                    * * * * *

1                           <u>CERTIFICATION</u>

2              I certify that the foregoing is a correct transcript

3      from the electronic sound recording of the proceedings in the

4      above-entitled matter.

5

6

7
        <u>  S/ Coleen Rand                   </u>      <u>December 3, 2012</u>
8      Coleen Rand, AAERT Cert. No. 341        Date

9      Certified Court Transcriptionist

10     AudioEdge Transcription, LLC

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25