```
                    U.S. DISTRICT COURT
             DISTRICT OF NEW JERSEY - TRENTON


   --------------------------
ASTRAZENECA AB, et al.,    :      DOCKET NO. CV-11-760(JAP)
                           :
          Plaintiffs,      :      Trenton, New Jersey
                           :
       -vs-                :      Friday, February 1, 2013
                           :
HANMI USA, et al.,         :
                           :
          Defendants.      :
   --------------------------


        TRANSCRIPT OF TELEPHONE CONFERENCE HEARD BEFORE
        THE HONORABLE TONIANNE J. BONGIOVANNI, U.S.M.J.




TRANSCRIPT ORDERED BY:

     McCARTER & ENGLISH, LLP




A P P E A R A N C E S:

(See attached)
```

AudioEdge Transcription, LLC
425 Eagle Rock Avenue - Suite 201
Roseland, New Jersey 07068
(973) 618-2310
www.audioedgetranscription.com

A P P E A R A N C E S:
(All attorneys appearing telephonically)

        JOHN EDMUND FLAHERTY, ESQ. (McCarter & English, LLP)
            – and –
        RAVIN PATEL, ESQ. (McCarter & English, LLP)
        Attorneys for AstraZeneca

        BRUCE HAUS, ESQ. (Fitzpatrick, Calle, Harper & Scinto)
            – and –
        JOSHUA I. ROTHMAN, ESQ. (Fitzpatrick, Calle, Harper &
        Scinto)
        EINAR STOLE, ESQ. (Covington & Burling, LLP)
        Attorneys for Plaintiffs.

        MAYRA VELEZ TARANTINO, ESQ. (Lite, DePalma,
        Greenberg, LLC)
            – and –
        MARK VOLEN, ESQ. (Shagrew (phonetic))
        Attorneys for Defendants

<u>I N D E X</u>

<u>02/01/13</u>

PAGE

<u>TELE PHONE CONFERENCE ON ISSUES</u>                    3

<u>COURT DECISIONS</u>:

   On permitting discovery to AstraZeneca            13

   On discovery re Judge Pisano's decision

   request to admit                                  21

1          (On record at 02:29:00 p.m.)

2              (All attorneys appearing telephonically)

3          THE COURT:  Good afternoon.  We're on the record in

4     AstraZeneca vs. Hanmi, 11-760.

5          And I wanted to stress that we are on the record.  I

6     know that you have submitted documents, letters, arguments and

7     have indicated that they be confidential, so we'll have to

8     deal with the transcript and any -- and sealing of the any of

9     the statements that are made after this hearing.

10         Although we're in the courtroom, there's no one in

11    here, just me and my Law Clerk.  So you have that protection.

12         Anyway, can I have appearances, please, on behalf of

13    AstraZeneca?

14         MR. FLAHERTY:  Yes, Your Honor.  From McCarter and

15    English, this is John Flaherty and Ravin Patel, P-A-T-E-L.

16    And I'll let my co-Counsel introduce himself.

17         MR. HAUS:  Good afternoon, Your Honor.  For

18    Fitzpatrick Calle, also for Plaintiffs, Bruce Haus speaking.

19    With me is my colleague Joshua Rothman and Einar Stole from

20    the Covington firm is also on the line.

21         THE COURT:  Okay.  And then for the Defendant?

22         MS. TARANTINO:  Good afternoon, Your Honor.  Mayra

23    Tarantino of Lite, DePalma, Greenberg.  And joining me is Mark

24    Volen (phonetic) from Shagrew (phonetic).

25         THE COURT:  Good afternoon.

1          MS. TARANTINO:  Good afternoon.

2          THE COURT:  You have raised before me two issues and

3    I'll talk about the first one that involves the patent

4    information form and the revised form that was submitted.

5          Let me get right to the heart of it and ask

6    AstraZeneca why the form is relevant at all and more

7    pointedly, if you can tell me, why Astra has not raised as

8    direct infringement claims relating to eight and nine?  That's

9    just a curiosity to me.

10         MR. ROTHMAN:  Good afternoon, Your Honor, this

11   Joshua Rothman and I will address those in -- in order.

12         The first question was why is it relevant.  The 2010

13   form that was submitted was Hanmi's statement and

14   representation to the FDA that their product that they sought

15   approval to market for a particular invitation infringes

16   claims eight and nine of the 504 patent.  That patent is

17   attached as Exhibit A to our motion.

18         If you look at claim eight, it reads "a method for

19   the treatment of gastrointestinal inflammatory diseases,

20   comprising the oral administration to mammal, including man,

21   in need of such treatment, a composition comprising an

22   effective amount" and then it goes on to describe an active

23   ingredient.

24         The same language that I just read is also present

25   in asserted claim seven.  Therefore their representation that

1    their product infringes those method of treatment limitations

2    is relevant to the question of whether they infringe those

3    very same claim limitations in asserted claim seven.

4              And again there is similar language with regard to

5    claim nine, which is -- which they represented was infringed

6    in their 2010 statement, because the claim language in claim

7    nine is similar to language in claim six.

8              So that is why their representation to the FDA that

9    their product infringes claims eight and nine is relevant to

10   asserted claims six, seven and ten.

11             THE COURT:  Okay.  And then the second part of my

12   question?

13             MR. ROTHMAN:  I'm sorry, Your Honor, did you want to

14   ask a question?

15             THE COURT:  No, no, go ahead.

16             MR. ROTHMAN:  Okay.  So in the second -- the second

17   question you asked was why did we not assert claims eight and

18   nine in this litigation.  At the time that we had to decide

19   which claims to assert, it was AstraZeneca's belief that

20   Hanmi's product did not infringe on those claims at that time,

21   based on the information we had.

22             THE COURT:  All right.  But they come -- after 2010,

23   they come and tell you or tell the FDA and you have access to

24   this in discovery that -- their assertion that they do in fact

25   infringe those claims and you've never changed your

1    infringement contentions, right?

2              MR. ROTHMAN:  That is -- that is correct.  What we

3    did was we took that 2010 statement and, again based on the

4    information we had, we did not seek to amend our contentions

5    to add claims eight and nine and we are not seeking to do that

6    here.  We are not looking to assert claims eight and nine

7    based on the information we have.

8              What we are seeking is the ability to maintain the

9    admissions that they made as support for our infringement

10   contentions concerning claims six, seven and ten.  And so

11   during discovery, we have that 2010 statement which was their

12   admission made by their lawyer on a declaration to the FDA.

13             And then we took their 30B6 deposition of their

14   regulatory person.  That deposition occurred in November 15th

15   and 16th of 2012.  We asked that regulatory

16   supervisor/manager, Mr. Quon, whether he had any information

17   as to whether that 2010 statement was incorrect.  Again, he

18   was the regulatory person.  He recognized that this was a

19   document that was submitted to FDA that he likely would have

20   reviewed.

21             We asked him whether he had any information as to

22   whether this document wasn't accurate.  In the two years since

23   that document was filed with the FDA, he had no information

24   that indicated that document was inaccurate.

25             We also asked Shagrew's Counsel at that deposition

1    whether they would agree that this document was a business

2    record.  We asked that question so that we would insure that

3    we would be able to rely on this admission at trial.  At that

4    deposition Shagrew's lawyer agreed that the document fell

5    within the business record exception to hearsay.

6            The deposition ended with AstraZeneca having the

7    admission from Hanmi's 30B6 supported that the document was

8    truthful or at the very least non-inaccurate and we had

9    Shagrew's stipulation or representation that the document was

10   a business record.  So the document is coming into evidence,

11   too.

12           THE COURT:  So essentially you, without alleging

13   that eight and nine are infringed, you were going to use that

14   patent information form, from 2010 that Hanmi submitted to the

15   FDA, as an inference and/or to support your argument that

16   these other claim terms are therefore infringed, but not --

17   there would not be direct infringement of eight and nine based

18   on that statement, but rather you would use it as support for

19   your arguments that -- which are they, six, seven and ten?

20           MR. ROTHMAN:  That's correct, Your Honor.

21           THE COURT:  That -- is that --

22           MR. ROTHMAN:  That is correct -- that is correct,

23   Your Honor, and that continues to be our position today.

24           THE COURT:  All right.

25           MR. ROTHMAN:  I was -- I -- go ahead.

1            THE COURT:  No, I am --

2            MR. ROTHMAN:  -- your question or did it?

3            THE COURT:   -- this is just a unique situation.

4            -- let me turn to Hanmi for a minute.  I know that

5    one of the questions that Astra has asked is whether or not

6    you intend to rely on the revised form that was propounded to

7    them on November 30th and authored or at least submitted to

8    the FDA on November 20th, 2012.

9            MR. VOLEN:  Good afternoon, Your Honor.  It's Mark

10   Volen for Hanmi.  Let me just start by fixing a couple things

11   that Mr. Rothman said.

12           First of all that first firm from 2010 does not say

13   anything about infringement of claims eight and nine.  That

14   form is Exhibit C to AstraZeneca's January 9th letter and in

15   the relevant box, the question asked by ND -- the ND -- the

16   FDA, excuse me, is whether Hanmi's NBA relates to a product

17   having relation to a method that's claimed in the 504 patent.

18           And claims eight and nine are not the claims and

19   those two claims are listed -- were listed there, but that

20   form said nothing about infringement of the patent.

21           And AstraZeneca knows very well that there is no

22   infringement, because claims eight and nine relate to a method

23   of treatment using a specific compound.  Okay?  And that

24   compound is different from the compound that's being litigated

25   in this suit.

1          THE COURT:  Okay.  Then let me ask why you saw fit

2     to revise the form?

3          MR. VOLEN:  Because in October of this year, or

4     excuse me of '12, Your Honor, just a few months ago, when

5     Hanmi submitted some additional papers to the FDA, Hanmi's

6     agent was advised that the form had to be updated in short

7     order.  Okay?

8          And the day they were due or the day the form was

9     due, we, meaning my law firm, was advised of this.  We took a

10    look at the form.  We noticed that the original one that had

11    been submitted to you before by Hanmi's prior Counsel didn't

12    make any sense on the 504 patent, so we took -- we fixed it,

13    because Hanmi, then --, is not in fact combing a method that's

14    called for on the claim.

15         Mr. Rothman indicated that after the deposition,

16    Hanmi's Counsel indicated that these documents are indeed

17    business records.  We don't have a problem with AstraZeneca

18    using the forms at trial and try to draw whatever inferences

19    it can from them.  But certainly there's no admissions of

20    infringement and there's no need for any discovery about this,

21    Your Honor.

22         THE COURT:  So I assume in your response that you do

23    intend to rely upon this revised form?

24         MR. VOLEN:  Your Honor, if they introduce the

25    original form, we know -- we may want to -- to rely on the

1    revised form, so that Judge Pisano has a full understanding of

2    the relevant facts as it relates to any issue on the case.

3              And just to be clear, they don't relate to

4    infringement per se, in -- in the terms of the admission that

5    AstraZeneca is arguing, because the compounds are different.

6    Eight and nine relates to a different compound.  It's the free

7    base form and claims six, seven and ten relate to a salt form.

8    And that's what the parties are litigating here is the salt

9    form claim.

10             THE COURT:  No, I'm clear on that.  The question is

11   whether this change in your position, two and a half years

12   later and after the close of discovery, is now of the

13   magnitude that the Plaintiff should be entitled to take

14   discovery on why there was a change.

15             And let me just comment on the timing.  I recognize

16   that Hanmi's position is they followed the rules.  I find it

17   -- what's the proper phrase?  It's not quite disingenuous, but

18   I can't quite have the outrage or the indignation that Hanmi

19   seems to have regarding Astra's request to have discovery on

20   this and how you just simply say, without blinking, that

21   "discovery is closed", when this form just coincidentally is

22   authored and sent to the FDA on the same day that fact

23   discovery is closed.  You followed the rules and you produced

24   it, not the same day or the next day, 10 days later, fine.

25   But to say that therefore Astra should be precluded from

1    taking any discovery because of the timing, just doesn't

2    resonate with me.

3          I will accept the representation that this form --

4    there wasn't anything more sinister going on, on Hanmi's part,

5    because this form was not revised and the decision wasn't made

6    to revise it until sometime in October, just a month before

7    the close of fact discovery.

8          If I had any indication that there was an intention

9    to revise the form in 2011 or early prior 2012 and you folks

10   sat on this, you'd be in trouble, to put it plainly.

11         But putting that aside, and I don't want Hanmi to be

12   defensive about that now, we're moving to the substantive

13   issue of whether or not it warrants discovery.

14         And, Mr. Haus, were you going to comment on the

15   import of this form?

16         MR. ROTHMAN:  Yes -- yes, Your Honor.  This Mr.

17   Rothman speaking.

18         THE COURT:  Oh, I'm sorry.

19         MR. ROTHMAN:  I did want to respond to Mr. Volen's

20   representation as to what the form says.  I will again direct

21   you, it is Exhibit C to our motion.

22         THE COURT:  Yes, I've read it.

23         MR. ROTHMAN:  The document does bear -- the document

24   does bear Hanmi's Bates numbers.  If you have it before you,

25   it's Hanmi 355.  The Section 4.2 on that form, the first box

1    next to that says patent claims number that's listed in the

2    patent and that is where claims eight and nine are represented

3    by Hanmi.

4           But if you look at the -- the box right to the right

5    of that, it reads "does or do the patent claims referenced in

6    4.2 claim a pending method of use for which approval is being

7    sought in the pending NBA amendment or supplement?"  And the

8    box is checked "yes".

9           That is Hanmi's representation that claims eight and

10   nine do claim the indications which are listed right below it

11   in box 4.2A.  So this is a representation by Hanmi that it

12   believed, when it submitted this form, that claims eight and

13   nine were infringed by the four indicated it was seeking

14   approval for.

15          THE COURT:  Okay.  I understand, folks, that we have

16   a dispute as to what this means and whether or not it is as

17   clear as Astra somewhat represents, namely, that you're

18   conceding infringement of eight and nine.

19          Frankly, what exactly this means - - it's certainly

20   important in terms of the relevance issue.  I can tell you

21   that I'm comfortable in recognizing that AstraZeneca has all

22   along been relying upon this form and in fact asked questions

23   at a deposition regarding the assertions in this form and it's

24   important to them.

25          Whether or not it's something that Judge Pisano is

1   going to find relevant or admissible, or if there is an

2   inference that is going to be of any moment in his decision is

3   for Judge Pisano to decide after he hears argument.  But I do

4   find that this form and the changed form are relevant.  And

5   obviously so does Hanmi to the extent that you're agreeing

6   that if AstraZeneca is going to rely on the 2010 form, then

7   there's going to be reliance by Hanmi on the revised 11/30/12

8   form.

9          So leaving you folks, respectfully, to make your

10  argument that this form should not be considered or should be

11  considered for another day, the question that I have is

12  whether or not AstraZeneca is entitled to some discovery and I

13  find that they are.

14         The scope of that discovery, however, is not going

15  to be as broad as AstraZeneca would like.  Perhaps the best

16  way -- place to start is for the -- Mr. Volen, for your client

17  to review the additional papers that were submitted to the FDA

18  in 2012 and if they are the documents that were instrumental

19  in prompting this revision, then they should be produced or a

20  privilege log should be produced.

21         And, in any event, I will allow a deposition as to

22  why it was determined that this form should be altered and

23  whether we go back to that regulatory individual or someone

24  else who could talk about why it was tweaked and changed and

25  fairly significantly is to be decided by the parties.

1          So that's where I come down on that issue.  Any

2     questions.  I'm looking to have the scope and the discovery

3     very narrow and given the time frame that we're talking about,

4     that's been represented to me, from October through November,

5     we shouldn't be looking at a wealth of documents that would be

6     implicated.

7          I'm not allowing --

8          UNKNOWN:  Your Honor --

9          THE COURT:  Let me just finish and then I can

10    certainly hear from you.  I'm not wrapping up into this

11    discovery what prompted the 2010 assertion or why that form

12    said what it says.  It's been represented that it's a business

13    record, you can use it.  It does say what it says.

14         And you can go through all of the steps that were

15    taken by the parties before that was put together and sent to

16    the FDA, but I'm not going to have you look at supporting

17    documents for that or pepper anyone with questions re-opening

18    a deposition solely on why the form was changed.  And I say

19    that rather simply, knowing it's probably not so simple and

20    I'll be hearing from you.

21         I need to keep you on a tight schedule, so I will

22    let you folks confer and come up with a game plan and let me

23    know early next week what the game plan is for the production,

24    so that we're not affecting trial or expert reports or the

25    like.

Conference                                          16

1          Okay, who wants to go first?  Mr. Rothman, were you

2      about to speak?

3          MR. ROTHMAN:  This is Joshua Rothman for the

4      Plaintiffs.

5          THE COURT:  Yes.

6          MR. ROTHMAN:  I would like to just raise one issue.

7      I think it wasn't -- he did allude to the importance of it

8      earlier when you were speaking about how you would be upset if

9      Hanmi did in fact know about the inaccuracy of the form in

10     2011 and did not change it then, but rather waited until now.

11         I would just ask if you would ask Hanmi to represent

12     that in fact they were not aware of this inaccuracy in 2012.

13     They have not made that representation and frankly we believe

14     they did know about it as early as 2011 and did withhold it

15     until now.

16         I understand you don't want to disparage them in any

17     way and so therefore I would just ask you to ask Mr. Volen to

18     make the representation on the record that should -- Hanmi was

19     not aware of this inaccuracy until late October 2012.

20         THE COURT:  Mr. Volen?

21         MR. VOLEN:  Yes, Your Honor, it's Mark Volen.  Yeah,

22     I would like to know why this allegation and this theory of

23     infringement based on Mr. Rothman's alleged -- alleged

24     admission in that form was never in AstraZeneca's infringement

25     contention regarding claims six, seven and ten?

1          And if they knew about it from the time they had

2     that document, since April of 2010, why was it not part of the

3     contention?  And we put that in our letter to Your Honor.

4          THE COURT:  I understand that.  I understand, Mr.

5     Volen, and it's great that, what is it, a good defense is a

6     good offense?  It doesn't work with me here.  AstraZeneca has

7     clearly through the discovery process indicated that this form

8     was important to them.  There's been no arguments that they

9     shouldn't get it or that it isn't relevant.

10         So by allowing it to be produced and allowing it to

11    be recognized as a business record and allowing AstraZeneca to

12    ask questions about it clearly places its relevance -- makes

13    its relevance a non-issue at this late stage.

14         AstraZeneca has represented that they are not

15    asserting eight and nine are infringed.  How much traction, if

16    you will, they're going to get from the argument that there is

17    this inference is again for another day.

18         But I am sitting here hearing that it's important to

19    them and you obviously view that it's important enough to need

20    to keep the record accurate and somebody looked at this 2010

21    form and said, ut oh, we need to make changes.  And now we're

22    getting this at the -- really after the close of fact

23    discovery.

24         So I don't feel that there is any need to ask

25    AstraZeneca why not, because it has been recognized as being

1    relevant.  It's not their position regarding eight and nine.

2    If you want to challenge their expert at trial, you can

3    certainly do that.

4             So the question that I would like answered, and

5    whether you need to confer with your client, is I would like

6    to know when it was determined that this form needed to be

7    changed.  And what I –– I believe I heard from you is that

8    something happened in October 2012 where additional papers

9    were being submitted to the FDA and you were told by the FDA

10   that you needed to update your documents in short order and

11   then the form –– it was decided that the form was going to be

12   amended.

13            So if you can't represent to me that that's what

14   happened or I'll put it this way, if there's any indication

15   that Hanmi knew they were going to be revising this form, but

16   you waited, I want to know about it.

17            MR. VOLEN:  That is absolutely nothing that.  As I

18   said previously, on October 29th of last year, Hanmi submitted

19   amendments to its NBA with the FDA who subsequently notified

20   that these forms had to be updated.  That information came

21   from my law firm in early November.  And within a day or so we

22   looked at the forms, turned them around.

23            My colleague, Ms. Lee, signed off on the final

24   forms, gave them back to the agents.  They were submitted to

25   the FDA.  We viewed it as a administerial correction of that

1    one paper.  It was produced to AZ promptly, okay, along with

2    all the other submissions to the FDA.  We're required by the

3    rules to produce the ongoing correspondence and we've been

4    doing that -- finished or here.

5            THE COURT:  Okay.  I --

6            MR. VOLEN:  Whether Hanmi ever knew about it before

7    that, they never told me or anybody in my firm.  That's all I

8    can say.

9            THE COURT:  All right, Mr. Volen.  I will leave that

10   issue there and as I said, I'd like you to take a look at the

11   forms that were reviewed and prompted the ministerial

12   correction, as you characterize it, and let us know if they

13   can be produced.  If for some reason you have a privilege,

14   then you need to provide the Plaintiff with a log.

15           And not knowing the volume of documents or how long

16   this would take, I would just like some feedback from you

17   folks next week.  Just an e-mail would be fine saying here's

18   our game plan.

19           I don't want anyone sitting on this or, if there are

20   going to be more issues that are raised with me, I need to

21   make sure that we all have time to deal with them, because

22   that 30-month day is looming, as you all know.  You know

23   better than me and I don't want to cause a log jam for you in

24   getting ready for trial and what the spill over effect might

25   be.  Okay?

1              I'd like to switch --

2              MR. VOLEN:  --

3              THE COURT:  Yeah.

4              MR. VOLEN:  -- sorry.  Can I raise one last point?

5      If there's going to be deposition on the -- could we ask that

6      it be ordered to occur in Korea?  The business folks at Hanmi

7      are always very good.  During the depositions that did occur

8      during fact discovery, this is a routine that if somebody

9      needed to be deposed, it was a week out of their business --.

10             -- date -- the prep time, ready for a deposition,

11     translation and so on.

12             THE COURT:  I will certainly consider options.  I

13     don't want to rule in a vacuum and here's why.  I'm not sure

14     who the correct person to depose would be and I will give

15     Hanmi the opportunity to offer someone.

16             And as an example, I recognize that we don't

17     generally want to expose trial counsel to depositions, but if

18     this is Miss Lee or there is anyone else who is in the United

19     States who has reviewed the documents and could be the

20     appropriate person, I'll leave you to discuss that and then

21     let me know if you have an issue as to who that should be.

22     And then if it's someone who is in Korea, discuss how that

23     should take place.

24             The other option is also, if it is someone who is in

25     Korea, that the deposition could be conducted by video

1    conference.

2              I don't expect this deposition to necessarily be

3    very lengthy, but again I'm talking about this in a vacuum.

4    You folks -- certainly Hanmi is in a better position to know

5    which documents were reviewed and anticipate what your

6    testimony is likely to cover.  AstraZeneca is a bit more in

7    the dark and I am certainly more in the dark than either of

8    you on this issue.

9              So a long winded way of suggesting that we go

10   through the document exchange first and you folks have a

11   discussion over who the appropriate person should be with

12   Hanmi making an offer if you want.  Okay?

13             MR. VOLEN:  Thank you, Your Honor.

14             THE COURT:  All right.  Switching to the request to

15   admit.  Just somewhat as an aside, I found it interesting, if

16   that's the proper word, as to why Astra needed to know whether

17   or not Hanmi would agree that all humans are mammals.  Never

18   seen one like that.  And then on the other side, Hanmi refuses

19   to answer that.

20             So that's how I enter this discussion and that is

21   something that I could use as a prime example of why, although

22   I understand the benefit of requests to admit, they are often

23   more trouble than they're worth.  And yes, I am on the record

24   saying that.

25             Okay, stepping back.  I think both sides are a

1    little bit correct as to what my thoughts were regarding this

2    discovery.  I never ruled definitively that we were going to

3    extend discovery.  I left open the possibility that, depending

4    on how claim construction came down, as well as the Motion to

5    Amend contentions, that you might not be done.  And I wanted

6    you to go off and see if you could reach an agreement as to

7    the game plan going forward, meaning, a schedule.

8           I also had encouraged you to have a discussion over

9    what discovery might be conducted, even though Hanmi was

10   opining that there really wasn't a necessity for any

11   discovery.

12          And the reason I threw that out there is frankly

13   that has worked in other situations where parties might agree

14   that it is more expeditious to conduct the discovery that's

15   being requested instead of fighting about it.  So I sent you

16   with that hope, if you will, in mind.

17          Where I come down now that we have a ruling by Judge

18   Pisano that was entered on the docket on the 23rd, just a week

19   ago, is that I'm going to permit discovery into the

20   information that has been permitted by Judge Pisano, meaning

21   that Hanmi should be permitted to assert that its proposed

22   product does not infringe, because the claims do not encompass

23   hydrated forms of the claimed salt of esomeprazole.  And

24   that's found on page three, the last sentence on page three of

25   Judge Pisano's opinion.

1              So to the extent that the permitted amendment ruled

2      upon by Judge Pisano warrants discovery, I'm going to allow

3      that.  I should add I am anticipating that it should be very

4      discreet and very limited.  This isn't an opportunity to open

5      the flood gates.

6              In terms of the request to admit, I don't see them

7      being helpful in this case and by that I'm not at all faulting

8      AstraZeneca for trying.  That is what I think you need to do

9      and at some point you folks are going to have to focus on

10     information that you can stipulate to for trial purposes and

11     that's right around the corner.

12             But I am concerned that Hanmi's responses are only

13     going to open up the flood gates and that you're going to

14     spend a lot of time briefing specifically why you can't

15     respond to each of these requests.

16             So instead of dealing with the request to admit, I

17     think you folks should start working on your stipulations.

18     And let me caution you, you don't want to be trying this case

19     in front of Judge Pisano or any District Judge where you

20     haven't pared down only to the essentials what's going to be

21     at issue.  It's just a waste of everyone's time.

22             So if you want to use as a template the requests to

23     admit and figure out how you can formulate your stipulations,

24     then go ahead and do that.

25             So coming full circle, I'm not going to require that

1    Hanmi respond to all of the requests to admit.  I am going to

2    permit discovery on the amended contentions as incorporated

3    into Judge Pisano's opinion, which is document 269 of our

4    docket, which was entered on January 23rd, as I mentioned.

5    And you folks should go off and talk about the scope and if

6    you have issues as to what that means, then that's something

7    that I -- I will have to address.

8                Any questions from Plaintiff?

9                MR. HAUS:  Your Honor, this is Bruce Haus.  No

10   questions.  And I understand your order.  I would like to

11   point out however that expert reports, based upon the schedule

12   we've agreed to, are now due on February 19th.

13               Unfortunately the claims of the patents are -- they

14   say what they say and one of them says that a human is a

15   mammal and we wouldn't have thought that was a difficult issue

16   to get an admission on for example, but without those

17   admissions we will now be required to have our experts put in

18   their reports all these little details that we were hoping to

19   avoid.

20               We certainly can do that and we can work on

21   stipulations, but if the past experience we've had in trying

22   to get simple things like this from Hanmi continues, it may be

23   a little difficult, but we certainly understand and we will

24   proceed as you have ordered.

25               THE COURT:  Okay.  Let me do this.  This I might be

1    able to help you with.  In light of the -- well, before I

2    rule, Mr. Haus, do you know if there's going to be a problem

3    with your producing the expert report on that date because of

4    the discovery you'd be getting on -- or be seeking on the

5    amended contentions?

6             MR. HAUS:  Well, to be honest, Your Honor, the

7    possibility exists, because we're still not sure of the claim

8    term that needs to be construed, if any, with respect to the

9    issue of hydrates.  We believe that there is a claim term with

10   respect to that, that is still disputed.  However Hanmi

11   disagrees.

12            We will certainly learn more during the expert

13   phase, but unfortunately these expert reports will be very

14   difficult to write and to respond to, because in many cases

15   we'll be writing things that may be unnecessary.  The experts

16   will be giving opinions on things that may be unnecessary and

17   we were hoping to limit those things in part through --

18   through things like these requests for admissions that in all

19   honesty could have been answered a month ago quite easily,

20   despite the -- the number.

21            Hanmi could have answered those in far less time

22   than we spent on these motion papers and we wouldn't be

23   talking to Your Honor on this issue.

24            However it appears that that is not possible and

25   we're just going to have to go into our expert phase a little

1    bit in the dark.

2              THE COURT:  All right.  But --

3              MR. VOLEN:  Your Honor, it's Mark Volen.

4              THE COURT:  Yes.

5              MR. VOLEN:  Mark Volen.  Could I speak -- because I

6    think that this -- if the Judge's ruling here is really, you

7    know, while it has permitted the proposed amendment, has made

8    -- stated on those motion papers, they were essentially

9    amendments which conformed the position to the records that

10   have been taken during discovery and include a summary

11   judgment record.

12             And so, as Judge Pisano said, -- is --.  Hanmi is

13   not permitted to assert non-infringement based on the hydrates

14   distinction.  The only question is whether or not the claims

15   cover hydrates, yes or no.  It's -- there's no dispute that

16   Hanmi's product is a petrol hydrate.  It's been established by

17   AstraZeneca during discovery.

18             And so we frankly don't see what discovery is

19   necessary.

20             THE COURT:  So your position is that all that has

21   been touched by the opinion is adding the new claim of

22   infringement and so no new discovery is warranted?

23             MR. VOLEN: Yes, we -- our -- our position, to the

24   extent it's based on non-infringement, is based on the

25   position that AstraZeneca has taken on the record primarily.

1    I think the claims, on the other hand, do cover the hydrates.

2    Judge Pisano made clear that our invalidity defense is a

3    bit --, certainly all matters for the expert reports that are

4    coming up in this case.

5              But honestly the only question that's -- simply the

6    only issue that is out there from a factual standpoint is the

7    composition of Hanmi's products as to which AstraZeneca has

8    had plenty of discovery.

9              I don't know, Your Honor, if you, by your comments,

10   you were thinking that, you know, discovery is re-opened or

11   something on Hanmi's product, but with due respect, we don't

12   think there's any need.  We're happy to try to work out

13   stipulations with Mr. Haus and his team.

14             THE COURT:  Well, two things.  One, I was not

15   suggesting that discovery, full blown discovery is re-opened.

16   I never want to foreclose or assume that any change to

17   contentions means that there is no discovery to be had.

18             I understand what the sentence says and I understand

19   that your position is that it just simply means there's a new

20   cause of action.  But I don't want to foreclose, in this case,

21   Plaintiff from making an argument that there's something else

22   that they need.

23             And if I agree with you, and I know Hanmi's position

24   has been all along that even if there is a change that it

25   wouldn't require discovery, and I understand what you're

1    arguing.  I just am not foreclosing it, I just simply

2    cautioning AstraZeneca that they'd have to convince me that

3    this ruling is something that they have -- they haven't been

4    addressing in discovery.  So I want to leave it at that.

5              As to the second point, I am, as I referenced, a

6    little perplexed as to why at least some of these requests

7    for admission could not have been responded to.  I mentioned

8    #104: humans are mammals.  Right above that, #103, if approved

9    for the indication sought in Hanmi's NBA, Hanmi's drug

10   products will be administered to humans.

11             I don't get, Mr. Volen, and I'm not quite loving

12   Hanmi's responses that they can't answer any of these.  So I

13   will encourage you to use these requests for admissions, 1

14   through 124, as the starting point for what you can stipulate

15   to and I'm going to hold you to a tight time frame, in light

16   of the production of expert reports.

17             I'd like you to let AstraZeneca which, if any, of

18   these you can agree to or would stipulate to by a week from

19   Monday.  So what is that, the 11th.  So by the 11th, I don't

20   know how much help that will give AstraZeneca, but I would

21   want -- I want Hanmi to at least let AstraZeneca know.

22             Perhaps we won't view them as requests to admit and

23   here's where the tweaking could come in.  If for some reason

24   Hanmi wants to qualify 103 by saying Hanmi's drug products

25   will not be -- will be administered to humans, "at least as of

1    this approval process" because you don't want to foreclose

2    that sometime in the future you might decide that it has some

3    use for some other mammal or other species that's out there.

4    Go ahead and do that.

5            If there's something in the -- the phrase or the

6    sentence that is troubling, that a qualifier might help, add

7    it and send it to AstraZeneca and maybe that will be good

8    enough to keep this process moving.

9            And if you figure out that humans are not mammals,

10   tell me.  Good?

11           MR. HAUS:  Your Honor, this is Bruce Haus for

12   Plaintiff.  Thank you for that clarification.  The whole

13   purpose of the -- phase was to find out exactly whether we do

14   have an issue and I think what you just proposed will work and

15   we will work with Hanmi's lawyers to get as much of this done

16   as we can between now and a week from Monday.

17           THE COURT:  Okay.  That would be great.  And if you

18   need slight tweaking to the expert production, let me know,

19   because I see percolating the potential -- the potential  that

20   there could be additional discovery sought based on the

21   contention amendment, but also we have this issue of why that

22   form was changed.  I don't know that that's going affect, I

23   can't anticipate that would affect experts necessarily.

24           But if you want to talk to me about a tweaking of

25   the schedule a bit, I'm open to that.  You folks know more

1    than me, the matter of time being of the essence.

2              So I will check in with you in a week -- I'll check

3    in with you after the 11th to see how things look, if I

4    haven't heard from you, how's that?

5              MR. HAUS:  That's fine, Your Honor.  There is one

6    other issue that if you have a moment we'd like to address.

7              THE COURT:  Sure.  I have nothing else to do on

8    Friday afternoon.  Go ahead.

9              MR. HAUS:  I understand that and I apologize.  As

10   you may know, Your Honor, we have a motion pending in the

11   District Court of Maryland on a third party subpoena.  We've

12   requested documents from Hanmi's US agent back in August of

13   last year.  And essentially we've been stonewalled for about

14   six months for getting these documents that likely would be in

15   the control of Hanmi, but I'm not sure of that.

16             That Motion to Compel is now fully briefed -- sorry,

17   the motion in Maryland is not fully briefed, but it will be

18   addressed soon and we expect -- we hope to get some additional

19   documents for that.  We don't know when that will be, but that

20   may have an impact on the schedule as well.

21             That's the only other pending discovery issue that's

22   not yet been resolved.

23             THE COURT:  I appreciate that.  I am not a big fan

24   of amending expert reports.  I think that often causes more

25   problems than it's worth, but again not knowing the import or

1    potential import of the documents that you're seeking, it's

2    hard for me to give you specific direction.

3             So let me plant this thought.  Have a chat.  I would

4    prefer certainly to have the expert reports produced sooner

5    rather than later so that we can keep you moving and then I

6    can field any unanticipated issues that might come up.  But if

7    you folks agree that it's -- the better course is to wait for

8    the Maryland Court to decide and you want to set a time frame

9    where you will hold off producing expert reports until X date,

10   giving Maryland a chance to decide, but if they haven't, then

11   you'll produce them with the right to seek to amend.  I could

12   certainly live with that, but I just use the -- the caveat or

13   cautionary statement that often that's -- amending is more of

14   a problem than it's worth.

15            But I leave that to you folks if you think that you

16   want to produce so that you have the bulk of it in and if you

17   need to seek to amend after you get those other documents,

18   then we can deal with it.

19            I'm putting a lot on you to really talk about what

20   makes sense, because you certainly should know your case and

21   what could be out there with these documents better than I

22   could and how important they might be to what you're

23   producing.

24            MR. VOLEN:  Your Honor, --

25            MR. HAUS:  I understand, Your Honor.

1           MR. VOLEN:   -- on this one two.  Again this subpoena

2      was served back in August and it's directed to a company

3      called Carexel (phonetic) or a third party that Hanmi retained

4      to interface with the FDA on its behalf.  The third party

5      retained its own Counsel to deal with the subpoena.  We

6      believe the subpoena simply requests documents that are

7      probably going to be close to 100 percent duplicative of the

8      documents that Hanmi produced in its FDA correspondence file

9      in this case.  That's been their job.

10          And contrary to Mr. Haus' insinuation, they should

11     not stonewall AstraZeneca in responding to the subpoena from

12     what I understand.  Although AstraZeneca did not include us in

13     the loop, in their communications with the third party, so we

14     don't always know what's going on.

15          And I just realized, as I was checking to prepare

16     for the call today, that although AstraZeneca supplied you

17     with their motion papers to compel, they didn't supply you

18     with what I understand are the opposition papers that Carexel

19     filed in the Maryland court last week.

20          So having just seen those and skimming them myself,

21     Carexel has a number of very significant objections to the

22     subpoena.  I do hope they're resolved, but honestly, Your

23     Honor, I think this is all a tempest in a teapot, because

24     whatever they might get out of Carexel is going to be

25     duplicative of the FDA documents they already got from Hanmi.

1          THE COURT:  Okay.  Well then let me ask them, maybe

2     I'm sometimes too practical.  Why haven't you been able to

3     broker, if you hired them, a resolution of this by perhaps

4     getting a certification from the third party saying that --

5     whatever it is - - for example: "Everything we got that we

6     would produce to you we got from Hanmi."  Hanmi can assert

7     that there isn't anything additional or the two of you and/or

8     do a search to call out the documents that might not have been

9     produced.

10         Again I don't know what the universe could be, but

11    if there was a way of shortening that issue, certainly the

12    Maryland Judge would want to know or see a certification if

13    that hasn't already been produced.  And I don't know if that

14    would make Astra go away.

15         MR. HAUS:  That might make Astra go away, Your

16    Honor, that would be very helpful.  It's been our experience

17    that, you know, Carexel has maintained that it's an

18    independent company.  I certain understand that.  But Mr.

19    Volen certainly can't know what's in their files if they are

20    that independent.

21         He seems to know and I can understand that, because

22    Carexel is the US agent for Hanmi.  So if Hanmi were to

23    suggest that they do something of the sort you just described,

24    it might resolve this issue much more quickly that has been --

25    than we've been doing in Maryland right now.

1          THE COURT:  You know if this issue was before me I

2      would invite you to invite the third party to get on the phone

3      with me or to just simply write to me in lieu of a whole

4      Motion to Compel.  I don't have jurisdiction over that fight

5      and I don't want to step on anybody's toes.

6          So I just offer that if Hanmi is in touch with them

7      and you can -- want to relay or, you know, I don't think that

8      it would be inappropriate for AstraZeneca, for you to reach

9      out and say this discussion came up and, you know, if it's so

10     that the production would be duplicative, then just tell me

11     that in a certification and we might go away.

12         So if you can broker that resolution, I'm sure

13     whoever this poor Judge in Maryland is, who has no idea what

14     you're about, would be very grateful.

15         MR. HAUS:  Well, maybe we can try to get the -- Mr.

16     Volen's firm and the firm representing Carexel together on a

17     phone call with us and we can try to discuss the potential

18     compromise.

19         THE COURT:  That would be perfect.  And you can tell

20     them that at my suggestion.  So, Mr. Volen, if you want to use

21     me as cover.  I can't order it, but that I just suggested that

22     you reach out to them to see if there was a way of resolving

23     this so that they don't have to go any further, although it's

24     probably fully briefed, if I understood right, but this --

25     this might make a -- make this issue moot.

1              MR. VOLEN:  Yes.  Thanks, Your Honor.  We'll see if

2     we can do anything too.

3              THE COURT:  Okay.  Great guys.  Can I go now?  Are

4     we good?

5              MR. HAUS:  Yes, Your Honor.

6              THE COURT:  Okay.  Have a great weekend and I will

7     be in touch in about two weeks if I haven't heard from you

8     folks, just to make sure that there isn't anything I need to

9     worry about and how the schedule looks and if you're moving

10    along, I'll just plug in another date for a conference call.

11             But I'll let you go right now, because we've got

12    certain things percolating.  I'll let you without setting up

13    another call right now.  But you know where I am if you need

14    me.

15             MR. VOLEN:  -- Your Honor.

16             UNKNOWN:  -- have a great weekend.

17             UNKNOWN:  Your Honor, we submitted a joint letter on

18    January 30th and are we to be operating under that?

19             THE COURT: Yes, I would operate under that and if

20    -- you know what, I can -- yes, I'm going to operate under

21    that letter.  I was trying to think whether I should pull it

22    back or not, if it hasn't gotten docketed.

23             Let me enter it and if you want to tweak it, then we

24    can always do that, but I'd rather have you at least using

25    that as the template and then however these other issues

1    affect it, you guys can decide and then let me know if you're

2    in agreement on tweaking it at all.  Good?

3              UNKNOWN:  Thanks, Your Honor.

4              MR. VOLEN:  One final point, I'm sorry, I didn't get

5    to get this in before Mr. Haus moved on to Carexel, but if the

6    Court is permitting this -- you know, the RF -- that relate to

7    the motion, it should be to amend to be used as a template for

8    proposed stipulation, would we be permitted to provide

9    AstraZeneca with a similar list of proposed stipulations.

10             THE COURT:  Oh, absolutely.  Absolutely.  And here's

11   why I'd rather have you talk about stipulations and then have

12   some back and forth.  You're going to have to work on

13   stipulations at some point, which you know.

14             And if it's helpful that instead of doing the black

15   and white, for example: I can't stipulate that all humans are

16   mammals, for whatever reason, you want to tweak it and say

17   just "according to the science -- scientific data that we have

18   now, all humans are mammals", and that's something you can

19   live with.  I want you to be able to have that back and forth

20   that you would engage in if you were coming up with some

21   stipulations.

22             So feel free to exchange them.  You'll be getting a

23   head start.  That would be great.  Okay?

24             UNKNOWN:  Thank you, Your Honor.

25             THE COURT:  All right, guys.  Good luck.

1          THE COURT:  Bye, bye.

2                  (Off record at 03:32:28 p.m.)

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>CERTIFICATION</u>

I, JENNIFER WILSON, the assigned transcriber, do hereby certify the foregoing transcript of proceedings before the U.S. District Court, District of New Jersey – Trenton, on February 1, 2013, on CD, index number from 02:29:00 to 03:32:28, is prepared in full compliance with the current transcription format for Judicial Proceedings and is a true and accurate non-compressed transcript of the proceedings as recorded to the best of my knowledge and ability.


    S/ Jennifer Wilson            February 5, 2013

JENNIFER WILSON  AD/T #623            Date

AudioEdge Transcription, LLC