**LITE DEPALMA GREENBERG, LLC**
Allyn Z. Lite
Mayra V. Tarantino
Two Gateway Center, Suite 1201
Newark, NJ 07102
(973) 623-3000
alite@litedepalma.com
mtarantino@litedepalma.com

*Attorneys for Defendants and Counterclaim-Plaintiffs Hanmi USA, Inc., Hanmi Pharmaceutical Co., Ltd., Hanmi Fine Chemical Co., Ltd. and Hanmi Holdings Co., Ltd.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ASTRAZENECA AB, AKTIEBOLAGET HÄSSLE, ASTRAZENECA LP, KBI INC., and KBI-E INC., <br><br> Plaintiffs and Counterclaim Defendants, <br><br> v. <br><br> HANMI USA, INC., HANMI PHARMACEUTICAL CO., LTD., HANMI FINE CHEMICAL CO., LTD, and HANMI HOLDINGS CO., LTD., <br><br> Defendants and Counterclaim Plaintiffs. | Civil Action No. 3:11-CV-00760-JAP-TJB <br><br> Judge Joel A. Pisano <br> Magistrate Judge Tonianne J. Bongiovanni |

**HANMI'S OPPOSITION TO ASTRAZENECA'S MOTION *IN LIMINE* TO PRECLUDE DEFENDANTS' EXPERT ATWOOD FROM TESTIFYING ON MATTERS AS TO WHICH HE IS ALLEGEDLY NOT QUALIFIED AS AN EXPERT**

## TABLE OF CONTENTS

I. Dr. Atwood Is Amply Qualified To Testify With Respect To Chemical Structures and Pharmaceutical Compounds and Topics Related Thereto ..................................................3

II. Dr. Atwood Has Ample Expertise In Each Specific Contested Area ................................4

    (1) Dr. Atwood has the requisite experience and understanding to provide helpful testimony on issues related to pharmacology .........................................................5

    (2) Dr. Atwood has the requisite experience and understanding to provide helpful testimony on issues related to clinical medicine......................................................7

    (3) Dr. Atwood has the requisite experience and understanding to provide helpful testimony on issues related to Hanmi's Product, The Prior Art, and Publications by the FDA............................................................................................................8

    (4) Dr. Atwood does not purport to provide a legal opinion on patent law, but may provide technical testimony within the framework of the patent laws ..................10

    (5) Dr. Atwood has the requisite experience and understanding to provide helpful comments on issues in this case – which do not include the "selection of a therapeutic area and starting point for a drug discovery program" .......................11

III. Conclusion .......................................................................................................................14

## TABLE OF AUTHORITIES

**Cases**

*Buzzerd v. Flagship Carwash of Port St. Lucie, Inc.*,
    669 F. Supp. 2d 514 (M.D. Pa. 2009) ................................................................................ 2

*First Marblehead Corp. v. House*, 541 F.3d 36 (1st Cir. 2008) ....................................... 1

*Holbrook v. Lykes Bros. S.S. Co., Inc.*, 80 F.3d 777 (3rd Cir. 1996) ............................... 1

*KSR Intl. Co., v. Teleflex, Inc.*, 550 U.S. 398 (2007) ....................................................... 9

*Microfinancial, Inc. v. Premier Holiday's Int'l, Inc.*, 385 F.3d 72 (1st Cir. 2004) ........ 3

*Pineda v. Ford Motor Co.*, 520 F.3d 237 (3rd Cir. 2008) ................................................ 2

*Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333 (11th Cir. 2003) ........ 2

*Smith v. Ford Motor Co.*, 215 F.3d 713 (7th Cir. 2000) .................................................. 2

*U.S. v. Mulder,* 273 F.3d 91 (2d Cir. 2001) ..................................................................... 9

*United States v. Vargas,* 471 F.3d 255 (1st Cir.2006) ..................................................... 1

*Walker v. Soo Line R.R. Co.*, 208 F.3d 581 (7th Cir. 2000) ............................................. 9

*Watson v. United States*, 485 F.3d 1100 (10th Cir. 2007) .............................................. 2

**Other Authorities**

Weinstein's Federal Evidence § 702.04[1][a] .................................................................. 1

**Rules**

Fed. R. Evid. 702 .............................................................................................................. 1

AstraZeneca moves for blanket preclusion of certain testimony of expert Dr. Atwood that would be helpful to the Court, arguing that Dr. Atwood is not qualified to opine in the areas of (1) pharmacology, (2) clinical medicine, (3) FDA regulatory issues, (4) patent law, and (5) the selection of a therapeutic area and starting point for a drug discovery program (hereinafter referred to as the "contested areas") (*see* D.I. 289-1, AstraZeneca's Motion *in Limine* at pp. 4-5).

AstraZeneca's overly narrow and conclusory views are without merit.[1] Dr. Atwood is fully qualified and has highly specialized expertise that is pertinent and integral to fundamental issues in this case, including inquiries in each of the contested areas as they relate to the determinations necessary to this proceeding.  Dr. Atwood's experience is highly relevant in analyzing the core issues of this case, and the Court will find his opinions to be helpful in deciding those issues.  Fed. R. Evid. 702.

A witness may qualify as an expert based on his or her knowledge, skill, training, experience or education in the field in question.  Fed. R. Evid. 702; *First Marblehead Corp. v. House*, 541 F.3d 36, 41 (1st Cir. 2008) ("It is not required that experts be 'blue-ribbon practitioners' with optimal qualifications.") (quoting *United States v. Vargas,* 471 F.3d 255, 262 (1st Cir.2006)).  Indeed even where a witness has educational and experiential qualifications in a ***general*** field related to the subject matter of the issue in question, it is an abuse of discretion for a trial court to exclude expert testimony solely on the ground that the witness is not qualified to render an opinion because the witness lacks expertise in specialized areas that are directly pertinent to the issues in question.  Weinstein's Federal Evidence § 702.04[1][a].

---

[1] AstraZeneca's arguments, though entirely misplaced, at best go to the weight of Dr. Atwood's testimony, not its admissibility.  See *Holbrook v. Lykes Bros. S.S. Co., Inc.*, 80 F.3d 777, 782 (3rd Cir. 1996).

1

A court should consider a proposed expert's full range of practical experience as well as academic or technical training when determining whether that expert is qualified to render an opinion in a given area.  *Smith v. Ford Motor Co.*, 215 F.3d 713, 718 (7th Cir. 2000).  Expert status may be based on extensive experience, knowledge, skill, or on-the-job training, even in the absence of formal education.  *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1343 (11th Cir. 2003).  A witness' self-estimation is a factor in assessing qualification, but is not dispositive.  *Watson v. United States*, 485 F.3d 1100, 1105-06 (10th Cir. 2007) (An "automatic rule that no witness who denies having the requisite expertise may testify . . . would risk turning a substantive and serious examination . . . into a game of gotcha, allowing lawyers to set cross-examination traps for unwary individuals . . . .  [I]t would hardly benefit the legal system to exclude from the stand self-deprecating individuals who rarely testify but have the expertise to do so in favor of those who are more extravagant and savvy to the legal system or who may make their living testifying in our courts."); *see also Pineda v. Ford Motor Co.*, 520 F.3d 237, 244-45, 248-49 (3rd Cir. 2008) (despite expert's testimony that he was not qualified as a warnings expert and did not purport to be one, his qualifications as an expert on glass were "unassailable" and allowed him to testify regarding effects of force on glass and adequacy of instructions and warnings in service manual; thus, the district court was found to have improperly concluded that the expert was not qualified to testify).

Whether a particular person has sufficient expertise to testify as an expert witness depends on the facts of the particular case, the questions propounded to the witness and the witness' specific qualifications.  *Buzzerd v. Flagship Carwash of Port St. Lucie, Inc.*, 669 F. Supp. 2d 514, 522 (M.D. Pa. 2009), *aff'd*, 397 F. Appx. 797 (3d Cir. 2010) ("[t]he issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those

qualifications provide a foundation for a witness to answer a specific question.") (internal quotation omitted); *Microfinancial, Inc. v. Premier Holiday's Int'l, Inc.*, 385 F.3d 72, 80-81 (1st Cir. 2004) (Fed. R. Evid. 702 inquiry is "flexible," and "not so wooden as to demand an intimate level of familiarity with every component of a transaction or device as a prerequisite to offering expert testimony").

I.  **Dr. Atwood Is Amply Qualified To Testify With Respect To Chemical Structures and Pharmaceutical Compounds and Topics Related Thereto**

Since 2007, Dr. Atwood has testified either at trial or by deposition in about fifty different cases. *See* D.I. 290-9, Expert Report of Jerry L. Atwood, Ph.D., dated February 19, 2013, Exhibit 1 (Atwood *curriculum vitae*). In this regard, Dr. Atwood has provided his testimony in cases related to pharmaceuticals for both branded and generic pharmaceuticals. In addition, Dr. Atwood has consulted widely for industry, particularly in the fields of pharmaceutical chemistry and polymer chemistry. *See* D.I. 290-9, Expert Report of Jerry L. Atwood, Ph.D., dated February 19, 2013 at ¶ 11.

Dr. Atwood is an expert in the fields of supramolecular chemistry, solid-state chemistry, crystal growth, crystal engineering, X-ray crystallography, organic chemistry, inorganic chemistry, and polymer chemistry.[2] *Id*. He also has significant experience in medicinal chemistry, principles of SAR, and structural modification. In this regard, Dr. Atwood is not only listed as an author on almost 700 publications in these fields, but he has served (and still serves) as an editor of numerous publications in these fields. *Id*. at ¶¶10-11. These areas are highly pertinent to resolving the fundamental issues of this case, and Dr. Atwood's expertise cannot legitimately be questioned. Further, Dr. Atwood's research involves characterization and

---

[2] When reciting Dr. Atwood's fields of expertise, AstraZeneca omits reference to organic chemistry (*see* D.I. 289-1 at p. 6), clearly one of the most fundamental fields pertinent to the issues in this case.

3

manipulation of the intermolecular interactions of chemical compounds that are responsible for the complex molecular interplay mechanisms known to be prevalent in biological systems (*see* Ex. 2, Reply Report of Jerry L. Atwood, Ph.D., dated April 8, 2013 (at ¶ 5)) and purification techniques and analyses (*id*. at ¶ 6).

Dr. Atwood is more than fully qualified to testify regarding the subject matter of, among other things, pharmaceutical compositions, such as those described and claimed in the '504 and '192 Patents, the prior art relevant to the '504 and '192 Patents, and to provide any other opinions related to characterization and manipulation of chemical structures and pharmaceutical compounds. *Id*. at ¶ 6. Dr. Atwood's opinions on these points will surely be helpful to the Court. Further, Dr. Atwood's vast experience establishes that he does have relevant expertise in each of these areas, which is the standard in this Court for determining admissibility of his opinions related to these areas. Indeed, under AstraZeneca's standards, this Court would not be able to hear the testimony of any expert to the extent an aspect of a given claim happened to require knowledge of more than one applicable practice area. Such a position is unworkable and incorrect.

**II.    Dr. Atwood Has Ample Expertise In Each Specific Contested Area**

AstraZeneca's reliance on select deposition excerpts to suggest that Dr. Atwood is not an expert in each contested area is misplaced and misleading. As discussed above, Dr. Atwood is more than qualified to testify as an expert regarding pharmaceutical compositions and to provide opinions related to chemical structures and pharmaceutical compounds. That alone should be sufficient to deny AstraZeneca's motion. Dr. Atwood's extensive full range of experience, education and training command recognition of expert status in the areas that are directly pertinent to the issues in question.

4

That Dr. Atwood has not claimed to be an expert in the areas as defined by AstraZeneca is not relevant. There is plainly no deficiency in terms of his ability to testify as to the subject matter specifically at issue in each such area. AstraZeneca's own experts likewise recognize that one need not be a particular expert as defined by AstraZeneca with respect to the relevant aspects of the claims at issue. *See, e.g.*, D.I. 294-6, Rebuttal Report of David A. Johnson on Validity dated March 25, 2013, ¶¶ 54-56 (agreeing with Dr. Atwood's understanding of the pharmacokinetic and pharmacodynamic terms recited in the claims of the '192 Patent); Ex. 6, Deposition of Jerry L. Atwood, dated April 26, 2013 at 56:5-12; *see also* Ex. 2, Reply Report of Jerry L. Atwood, Ph.D., dated April 8, 2013 at ¶ 8 (an analysis of the pharmacodynamics and pharmacokinetics of the compounds in the prior art are not necessary, since they are the same compounds disclosed and claimed in the '504 and '192 Patents). Nonetheless, Hanmi briefly will address AstraZeneca's contested areas.

**(1) Dr. Atwood has the requisite experience and understanding to provide helpful testimony on issues related to pharmacology**

Dr. Atwood does not hold himself out to be an expert practicing pharmacology on a day to day basis. The fundamental issues in this case, however, do not require such expertise.

Dr. Atwood has not offered any position on the mechanism of action of (-)-omeprazole in treating diseases because the asserted claims are not directed to pharmacological mechanisms of action and do not require specialized expertise in pharmacology. The asserted claims of the '504 and '192 Patents are directed to "pharmaceutical formulations" or methods of treating/production that comprise the pharmaceutical formulation, which "causes" or "elicits" certain biological effects. Even the "biological effect" claims of the '192 Patent (claims 1-6, 13-18) do not require any activities to be carried out by a pharmacologist, and do not require the expertise of a pharmacologist to understand such claims. AstraZeneca's own witnesses, Dr. René Levy,

5

testified that those effects occur inherently after the claimed drug is ingested, and Dr. Atwood relied on statements that the biological effects are inherent in rendering his opinions. *See, e.g.*, Ex. 13, Rebuttal Report of René H. Levy, dated March 25, 2013 at ¶¶ 49-51, 98; *see also* D.I. 290-9, Expert Report of Jerry L. Atwood, dated February 19, 2013 at ¶¶137-139.

No specialized pharmacology expertise is required to read the "biological effects" language of certain claims and determine that language is nowhere present in any application prior to the 08/833,962 application leading to the '192 Patent. In fact, AstraZeneca's witness, Dr. Levy, came to the same conclusion and confirmed the views of Dr. Atwood. *See* Ex.4, Deposition of René H. Levy, dated April 18, 2013 at 78:20-25; 111:3-112:17. Similarly, Dr. Atwood's determination that there is *no* data in the '192 Patent that supports any use of the claimed neutral forms of (-)-omeprazole to treat diseases and achieve certain biological results does not take any particular expertise in pharmacology. Nor do any of Dr. Atwood's opinions relate to the pharmacology underlying the claimed pharmacologic effects. The irrelevance of the pharmacology underlying the claimed biological effects to the present case is confirmed by the fact that AstraZeneca's Dr. Levy never conducted any pharmacological testing of Hanmi's product to form his views. *See* Ex.4., Deposition of René H. Levy, dated April 18, 2013 at 27:4-28:2. Rather, he simply compared statements in Hanmi's NDA to the claims of the patent. *See, e.g.*, D.I. 294-4, Opening Report of René H. Levy, dated February 19, 2013 at ¶¶ 83-91.

With his extensive expertise in chemistry, Dr. Atwood understands concepts of pharmacology, uses pharmacological data in his own research, analyzes data, etc., and is entirely capable of providing helpful testimony to the court relating to the subject matter of the claims, which do not recite any steps to be carried out by a pharmacologist. *See* Ex. 6, Deposition of Dr. Atwood, dated April 26, 2013 at 11:13-20; 14:4-10; 18:13-20; 51:11-18.

### (2) Dr. Atwood has the requisite experience and understanding to provide helpful testimony on issues related to clinical medicine

As Dr. Atwood's testimony makes clear, one may understand and use information related to clinical studies without having the expertise to actually carry out clinical studies. *See* Ex. 6, Deposition of Dr. Atwood dated April 26, 2013, at 53:13-22.  His experience in issues related to clinical medicine allow him to provide the Court with informed and helpful testimony on fundamental issues that may touch upon matters referred to in the claims.

AstraZeneca states that Dr. Atwood testified on matters relating to clinical medicine, based on statements relating to "evaluating the significance of *in vivo* toxicity data on infringement under the doctrine of equivalents." (D.I. 289-1, p. 4).  On its face, that subject matter has nothing to do with clinical medicine, and the testimony relied upon by AstraZeneca demonstrates that it does not.  In the supporting testimony AstraZeneca cites, Dr. Atwood reported on a toxicity study contained in Hanmi's NDA comparing Nexium and Hanmi's proposed product in male and female rats.  *See* Expert Report of Jerry L. Atwood, dated March 25, 2013 at ¶¶ 117-119.  The NDA report shows Hanmi's proposed product to be less toxic than Nexium in certain situations.  *Id.* at ¶118.  An understanding of the results of the rat toxicology studies contained in Hanmi's NDA does not require expertise in clinical medicine as suggested by AstraZeneca.  To begin with, clinical medicine pertains to the treatment of patients, not testing carried out on laboratory rats.  In any event, Dr. Atwood is accustomed to reviewing *in vivo* biological studies.

Nor does Dr. Atwood's rebuttal to Dr. Johnson's and Dr. Bartlett's opinions about "long felt need" require expertise in clinical medicine.  The passages referred to by AstraZeneca in its motion point out Dr. Atwood's views about the plain contradiction in the testimony of two

7

AstraZeneca witnesses.  Nowhere does Dr. Atwood opine on aspects of the treatment of patients or of clinical medicine, and indeed no such expertise is required.

In testifying whether proton pump inhibitors were disclosed in any applications prior to the '192 Patent, no expertise in clinical medicine is required for Dr. Atwood to simply study the prior art applications and determine that proton pump inhibitors were not described anywhere. As AstraZeneca has conceded, the patents in suit are directed to persons of ordinary skill in the art who, according to AstraZeneca's proposed definition, are not experts in clinical medicine. *See, e.g.*, D.I. 294-1, Report of Stephen G. Davies, Phil on Infringement, dated February 19, 2013, ¶ 29.

Finally, Dr. Atwood's views regarding the biological limitations of aspects of certain claims of the '192 Patent are not based on the point of view of a clinician.  As stated in his report, his views are based on a reading of the '192 Patent claims, and how a person of skill in the art would understand those claims.  *See* Atwood Report dated February 19, 2013 at ¶¶ 12-13, 22.  A person of ordinary skill in the art is not an expert in clinical medicine, (*Id*. at 22), and it appears that neither Dr. Johnson, Dr. Davies, nor any other AstraZeneca witness has cited to the need for any specialized clinical expertise in understanding the subject matter of the "biological limitations" of the claims of the '192 Patent.

> **(3)    Dr. Atwood has the requisite experience and understanding to provide helpful testimony on issues related to Hanmi's Product, The Prior Art, and Publications by the FDA**

Dr. Atwood does not hold himself out to be an expert in FDA regulatory issues nor does he provide opinions on a matter in this case that falls solely within this field.  The fundamental issues in this case do not require such analysis.

For example, AstraZeneca cites to paragraph 116 of Dr. Atwood's second report, where Dr. Atwood relies upon information provided to him about section 505(b)(2) FDA applications in forming his opinions about the differences between pharmaceutical salts from a chemical perspective. *See e.g.*, D.I. 289-1, pp 4-5; D.I. 289-5, p. 46. Atwood's reliance is entirely proper, since experts are permitted to rely on information provided to them in areas in which they are not experts. An expert appropriately may rely upon reports of others to formulate his opinion, and such reliance is often an indicia of reliability. *See Walker v. Soo Line R.R. Co.*, 208 F.3d 581, 588 (7th Cir. 2000) ("Indeed, courts frequently have pointed to an expert's reliance on the reports of others as an indication that their testimony is reliable"); *see also U.S. v. Mulder,* 273 F.3d 91, 102 (2d Cir. 2001) ("expert witnesses can testify to opinions based on hearsay or other inadmissible evidence if experts in the field reasonably rely on such evidence in forming their opinions") (internal citation omitted). In addition, Dr. Atwood would certainly be permitted to rely on concepts of bioequivalence as provided to him by others in forming his opinion as an expert.

Finally, Dr. Atwood does not need to be an expert in FDA matters to comment on the meaning of the certain FDA policies to a person of ordinary skill in the art. As the Supreme Court has said in *KSR*,

> Common sense teaches, however, that familiar items may have obvious uses beyond their primary purposes, and in many cases a person of ordinary skill will be able to fit the teachings of multiple patents together like pieces of a puzzle.

*KSR Intl. Co., v. Teleflex, Inc.*, 550 U.S. 398, 420 (2007).

Indeed, a POSA would consider published statements by the FDA and commentary thereupon regarding enantiomers in the same way as other prior art regarding enantiomers. AstraZeneca concedes that the disclosures of both the '192 and '504 Patents are directed to a

9

person of ordinary skill in the art, and nowhere in any of AstraZeneca's proposed definitions of a POSA is FDA expertise required. *See, e.g.*, D.I. 294-1, Report of Stephen G. Davies, Phil on Infringement, dated February 19, 2013, ¶29. It is indeed ironic that AstraZeneca seeks preclusion of Dr. Atwood's testimony as an expert in FDA matters, when neither Dr. Atwood nor a person of ordinary skill in the art have been held out as having specialized knowledge in FDA matters.

**(4) Dr. Atwood does not purport to provide a legal opinion on patent law, but may provide technical testimony within the framework of the patent laws**

In his reports, Dr. Atwood has not held himself out to be an expert on patent law. Nor will Dr. Atwood provide legal opinions on patent law; rather, he will be applying his technical expertise in the framework of the pertinent patent issues. As a named inventor on at least 13 patents, Dr. Atwood has an understanding of patents relevant to analyzing the fundamental issues of this case and has explained that his opinions are based on that working knowledge and his views as a chemist. *See* Ex. 6, Deposition of Dr. Atwood, dated April 26, 2013 at 181:21-182:2. Again, such testimony will help inform the Court on the pertinent issues in the case.

For example, Dr. Atwood's views on the significance of Hanmi's independent research of its esomeprazole strontium product do not require particular expertise in patent law. *See* Second Expert Report of Jerry L. Atwood, dated March 25, 2013 at ¶¶ 113-120. Rather, his opinions are based on his views as a chemist and his experience with the research and development process.

Second, nowhere has Dr. Atwood purported to interpret the Supreme Court's *Warner-Jenkinson* decision as a patent law expert. His comments relate his understanding of the case as a person of ordinary skill in the art would understand it, rather than from the perspective of a patent law expert. None of the other comments or testimony cited by AstraZeneca relates to Dr. Atwood holding himself out as a patent law expert; instead, he simply explains that while certain

legal standards have been provided to him, his application of the standards was based on his understanding that of a person of ordinary skill in the art would have had. *Id.* at ¶¶ 41-42.

It is undisputed that not a single one of AstraZeneca's experts are lawyers, patent lawyers, or have expertise in patent law. But none of them hesitated on opining on such legal issues as enablement, written description, possession, infringement, the doctrine of equivalents, double patenting, and even issues such as priority dates and incorporation by reference. If Dr. Atwood's testimony regarding his application of the doctrine of equivalents, and his views on the independent development of Hanmi's product are precluded, then all of AstraZeneca's witnesses testimony pertaining to legal or patent law matters should be precluded for identical reasons.

**(5)    Dr. Atwood has the requisite experience and understanding to provide helpful comments on issues in this case – which do not include the "selection of a therapeutic area and starting point for a drug discovery program"**

The issues to which Dr. Atwood will testify in this case, however, do not relate to the area of "expertise" identified by AstraZeneca. In conjunction with his vast chemical experience, Dr. Atwood has expertise working with pharmaceutical compounds including, for example, lansoprazole, a well-known proton pump inhibitor compound. *See* Ex. 6, Deposition of Dr. Atwood, April 26, 2013, at 33:25-34:9; 42:24-43:22. He has a general knowledge of the field of compounds useful for inhibiting gastric acid production, including proton pump inhibitors. This general knowledge is highly pertinent to, and clearly helpful for understanding, what one of ordinary skill in the art would have appreciated from (and how they would have been guided by) the teachings of prior art references discussing other proton pump inhibitor compounds, such as Erlandsson and Kohl, and further supply ample basis for Dr. Atwood to provide expert testimony on issues related to his testimony in this case. Dr. Atwood has extensive specific knowledge,

experience, and understanding to provide helpful comments on issues <u>related to the claims of the asserted patents</u>, which is the standard in this Court for determining whether it is fair and helpful for the trier of fact to consider his opinions.

Importantly, there is no such field of expertise defined as "the selection of a therapeutic area and starting point for a drug discovery program." (D.I. 289-1, p. 5). AstraZeneca has identified no degree programs in that area, has identified no journals or learned treatises directed to that topic, and none of its experts claim expertise in that field. None of its experts define a person of ordinary skill in the art as requiring knowledge of "the selection of a therapeutic area" or "starting points for a drug discovery program," and so no expertise in those areas is required. Its seeming articulation of a field of *pseudo*-expertise has apparently been crafted to support its new argument that persons of skill in the art in 1993 would have no idea where to start in finding an improved agent for the treatment of gastric acid related diseases. AstraZeneca is wrong for a number of reasons.

First, the background section of the '504 Patent makes clear the patentee's acknowledgment that omeprazole and lansoprazole were known in the prior art as effective agents for the treatments of gastric acid diseases, and that the enantiomers of omeprazole had been isolated in neutral form, but not as solids. *See* '504 Patent, col. 1, ll. 13-42. Omeprazole and lansoprazole are proton pump inhibitors. With that clear acknowledgment, a person of skill in the art would not have to choose between the many classes of gastric acid drugs that existed in 1993, and so AstraZeneca's false field of expertise is irrelevant in this case.

Second, nowhere in AstraZeneca's March 19, 2012, amended infringement contentions and amended invalidity contentions did AstraZeneca posit that persons skilled in the art would have to begin by first selecting a therapeutic area and thereafter a starting point for a drug

12

discovery program. Rather, AstraZeneca was quite clear that persons skilled in the art would have already been working in the area of PPIs and would have selected PPIs other than (-)-omeprazole as a starting point:

> In light of the foregoing, there was no "apparent reason" for a person of ordinary skill in the art to select (−)-omeprazole for research based on DE '455, or to make a "pure solid state alkaline salt" of (−)-omeprazole in at least 94% e.e., formulations containing the same, and methods of use thereof.[85] Indeed, the prior art knowledge would have discouraged any such effort.[86]
> Instead, a person of ordinary skill involved in PPI drug discovery in May 1993 would select any of the many other known PPIs for research,[87] and would make new structural analogs.[88] This is reflected in the actions of AstraZeneca and Byk Gulden.

(*See* D.I. 297, AstraZeneca's Amended Responses to Hanmi's Invalidity Contentions, dated March 19, 2012 at pp. 21-22). AstraZeneca's arguments that "expertise" would be required to first select a therapeutic area and then a starting point is squarely undermined by their earlier contentions that a POSA working in the area of PPIs in 1993 would have started with *other* known PPIs rather than (-)-omeprazole. AstraZeneca has made clear that the selection to work in the PPI therapeutic area has already been made, and other known PPIs would provide a suitable starting point.

AstraZeneca cannot now run from its earlier contentions by claiming that an illusory choice requires imaginary expertise.

Finally, none of the claims of the asserted patents in suit relate to a starting point for a drug discovery program. The asserted claims relate to organic compounds and pharmaceutical formulations, and so expertise in organic chemistry and pharmaceutical formulation is more relevant. As further proof of the irrelevance of AstraZeneca's false field of expertise, one or more of AstraZeneca's experts have testified that the claimed compounds and formulations did

13

not result from AstraZeneca's drug discovery program. *See e.g.*, Ex. 14, Deposition of Paul A. Bartlett, dated April 17, 2013 at 166:24-169:6. Apparently there was no interest at AstraZeneca in the project resulting in the claimed compounds, and so one of the inventors, Mr. von Unge, did the work on his own time. *See id.* and D.I. 294-5, Rebuttal Report of Paul A Bartlett on Validity, dated March 25, 2013, ¶¶136- 141. As such, neither "the selection of a therapeutic area" nor "the starting point for a drug discovery program" are relevant inquiries or fields of expertise in this case.

### III. Conclusion

For the foregoing reasons, Hanmi respectfully requests that AstraZeneca's motion be denied.

Dated:  May 6, 2013                                  **LITE DEPALMA GREENBERG, LLC**

*s/Mayra V. Tarantino*
Allyn Z. Lite
Mayra V. Tarantino
Two Gateway Center, Suite 1201
Newark, NJ 07102
(973) 623-3000
alite@litedepalma.com
mtarantino@litedepalma.com
**SUGHRUE MION, PLLC**
Mark Boland
Michael R. Dzwonczyk
Renita S. Rathinam
2100 Pennsylvania Ave., NW
Washington, DC 20037-3213
(202) 293-7060

    mboland@sughrue.com
    mdzwoncyzk@sughrue.com
    rrathinam@sughrue.com
    John B. Scherling
    4250 Executive Square
    Suite 900
    La Jolla, CA 92037
    (858) 795-1180
    jscherling@sughrue.com
    *Attorneys for Defendants and Counterclaim-Plaintiffs Hanmi USA, Inc., Hanmi Pharmaceutical Co., Ltd., Hanmi Fine Chemical Co., Ltd. and Hanmi Holdings Co., Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2013, I caused a copy of the foregoing **Hanmi's Opposition to AstraZeneca's Motion *In Limine* To Preclude Defendants' Expert Atwood From Testifying On Matters As To Which He Is Allegedly Not Qualified As An Expert** to be served upon the following counsel by electronic mail:

John E. Flaherty, Esq.
Jonathan M. H. Short
McCARTER & ENGLISH
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444
JFlaherty@mccarter.com
JShort@mccarter.com

Einar Stole
COVINGTON & BURLING LLP
1201 Pennsylvania Avenue, NW
Washington, DC 20004-2401
(202) 662-6000
EStole@cov.com

Henry J. Renk
Bruce C. Haas
Colleen Tracy
Joshua I. Rothman
FITZPATRICK, CELLA, HARPER & SCINTO
1290 Avenue of the Americas
New York, NY 10104-3800
(212) 218-2250
HRenk@fchs.com
BHaas@fchs.com
CTracy@fchs.com
JRothman@fchs.com

*s/Mayra V. Tarantino*
Mayra V. Tarantino